1999 WL 595629
1999-2 Trade Cases P 72,616, 1999 Copr.L.Dec. P 27,974
(Cite as: 1999 WL 595629 (S.D.N.Y.))

Page 1

United States District Court, S.D. New York.

Anthony L. WILLSEA, Plaintiff,
v.
Scott A. THEIS, Document Technologies, Inc. and Charles Weeden, Defendants.

No. 98 Civ. 6773(BSJ).

Aug. 6, 1999.

MEMORANDUM & ORDER

JONES, J.

*1 Plaintiff, a former employee of defendant Document Technologies, Inc. ("dTech"), brings this action against dTech and two of its employees, Scott Theis and Charles Weeden. Defendants move to dismiss the Complaint and for attorneys fees and costs associated with the copyright causes of action. Defendants also bring a separate motion for sanctions, pursuant to Federal Rule of Civil Procedure 11. Plaintiff cross-moves for Rule 11 sanctions. For the reasons which follow, defendants' motion to dismiss the Complaint is granted in part and denied in part, defendants' motion for attorneys fees and costs is denied without prejudice, defendant's motion for Rule 11 sanctions is denied without prejudie, and plaintiff's motion for sanctions is denied with prejudice.

I. BACKGROUND

The following facts are taken from plaintiff's Complaint, documents relied upon therein, and from matters of public record. [FN1] Factual allegations from Plaintiff's Complaint are assumed to be true for the purpose of deciding this motion.

FN1. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may consider facts alleged in the Complaint, documents incorporated by reference therein, as well as documents the plaintiff either had in its possession or knew of and relied upon in bringing suit. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991). The Court may also consider matters of public record, including statutory and case law, in deciding a motion to dismiss. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir.1998).

Defendant Document Technologies, Inc. ("dTech"), markets a software program, EDGAR Ease, which converts certain Securities and Exchange Commission ("SEC") documents into the Electronic Data Gathering Analysis and Retrieval ("EDGAR") format mandated by the SEC. Plaintiff Willsea, a former employee of dTech, now operates his own company National Filing Services, Inc. ("NFS").

A. Actions Brought By dTech Against Willsea and NFS.

In March of 1996, dTech sued Willsea and NFS in federal court for, among other things, copyright infringement. See Document Techs., Inc. v. Willsea & Nat'l Filing Servs., Inc., 96 Civ. 1647(DAB) (S.D.N.Y.1996) [hereinafter "the 1996 Action"]. In its infringement claim, dTech alleged that Willsea and NFS marketed an electronic reference guide based on and copied from an online help program included as part of the EDGAR Ease software. See 1996 Action Compl. ¶ 17 (filed Mar. 6, 1996). In the 1996 Action, dTech also alleged that Willsea and NFS conducted training sessions for dTech's clients in breach of fiduciary duties Willsea owed dTech, and that these training sessions employed dTech's proprietary materials.

In the 1996 Action, dTech alleged that defendant Theis was the original owner of the copyright to EDGAR Ease, and that Theis had registered the copyright with the United States Copyright Office on February 15, 1994. (1996 Action Compl. ¶ 9.) A copy of the registration, annexed as Exhibit B to the 1996 Action Complaint, listed Theis as the sole author of the copyright in EDGAR Ease.

The 1996 Action was brought not by Theis, but by dTech. According to dTech's Complaint, Theis assigned all of his rights, title and interest, including the copyright, in EDGAR Ease to dTech by agreement dated March 5, 1996. (1996 Action Complaint ¶ ¶ 9-10.) Annexed as Exhibit D to the 1996 Action Complaint was a copy of the EDGAR Ease program start-up screen. The start-up screen displayed a copyright notice listing Theis as copyright holder from 1993 to 1995 and dTech as holding the copyright as of 1995.

*2 At no time during the pendency of the 1996 Action did Willsea and NFS claim that Willsea was a

co-author or joint author of either the EDGAR Ease software or the accompanying Help software. Instead, they asserted, in conclusory fashion, only that neither EDGAR Ease nor the Help software were copyrightable.

The 1996 Action was resolved by the entry of a Stipulation and Order of Settlement dated April 15, 1996 (the "Settlement Agreement"), which purported to "settle and resolve all claims which have been or could have been raised by any of [the parties] against one another in this action." The Settlement Agreement resulted in the dismissal of all claims with prejudice. In the Settlement Agreement, Willsea and NFS promised to (1) return to plaintiffs and erase from their computers all versions of the EDGAR Ease software and all security programming codes for the software; (2) refrain for one year from offering EDGAR conversion services or training in the use of EDGAR Ease, and from soliciting similar business from delineated companies; and (3) purchase two copies of EDGAR Ease from plaintiff, refrain from purchasing or copying copies of EDGAR Ease from any other source, and utilize EDGAR Ease only in accordance with the license provided with the purchase of each copy of the EDGAR Ease software. Although the 1996 Action claimed infringement only in the Help software, the Complaint alleged copyright ownership of the EDGAR Ease software as well as the Help software. Moreover, the Settlement Agreement was not limited to the Help software, but also enforced the copyright in EDGAR Ease. Notably, in the 1996 Action, Willsea and NFS alleged in their Answer that the copyright in the EDGAR Ease software, not just the copyright in the Help software, was invalid. As relief, Willsea and NFS sought a judicial declaration canceling any copyright in EDGAR Ease.

In settling the 1996 Action, Willsea, NSF and dTech also executed a formal release of claims. The release was annexed as Exhibit B to the Settlement Agreement (*see* Theis Decl. ¶ 9 & Ex. 4.) Willsea and NFS covenanted not to sue dTech, and released dTech from, *inter alia,* all causes of action, suits, debts, dues, covenants, contracts, agreements, damages, and claims and demands in law "which [Willsea and NFS] and its employees, officers, directors, affiliates, heirs, executors, administrators, successors and assigns ever had," including "any claims, counterclaims or causes of action which were or could have been asserted in, or which arises for any of the facts or transactions that form the basis for any claim or counterclaim set forth in any pleading filed" in the 1996 Action. (*See id.*)

On March 25, 1998, dTech filed a new action in federal court against Willsea and NFS. *See Document Techs., Inc. v. Willsea & Nat'l Filing Servs., Inc.,* 98 Civ. 4519(BSJ) (filed Mar. 25, 1998) [hereinafter the "1998 dTech Action"]. Where the 1996 Action alleged infringement of the copyright in the EDGAR Ease "Help" software, the 1998 dTech Action alleges that Willsea and NFS are infringing dTech's copyright in the EDGAR Ease software itself, and that they are in violation of the 1996 Settlement Agreement. In particular, dTech alleges that Willsea and NFS (1) have made and distributed unauthorized copies of EDGAR Ease version 1.3 (*see* 1998 dTech Action, Compl. ¶ 26(a)); (2) unlawfully obtained a copy of the updated program, version 2.0 of EDGAR Ease, from a third party and have made and used further unauthorized and unlicensed copies from the unlawfully obtained copy (*see Id.* ¶ 26(b)); and (3) possess dTech's proprietary software security codes, and have used those codes to circumvent built-in protections against unlicensed copying and use of both versions of the EDGAR Ease software. (*Id.* ¶ 26(c).)

B. The Instant Action.

*3 Willsea filed the instant action on September 24, 1998. *See Willsea v. Theis et. al.,* 98 Civ. 6773(BSJ) (filed Sept. 24, 1998) [hereinafter the "Willsea Action"]. Because the Willsea Action is related to the 1998 dTech Action, the two 1998 actions were consolidated before this Court.

In the Willsea Action, Willsea now claims to have been a coauthor, along with Theis, of the copyright in EDGAR Ease. Willsea alleges that (1) Theis fraudulently induced Willsea not to assert his own rights in the copyright and fraudulently induced the United States Copyright Office to register a copyright in Theis's name alone; (2) Willsea is entitled to a declaratory judgment that he owns 50% of the interest in the EDGAR Ease copyright and is due 50% of the profits from sale and licensing of that copyrighted software; (3) Theis breached a fiduciary duty owed to Willsea; (4) Theis has been unjustly enriched; and (5) Theis is required to provide Willsea with an accounting of profits from the licensing of the EDGAR Ease Software. Each of the causes of action raised against Theis derives from Willsea's claimed status as co-author and co-owner of the copyright.

Willsea also raises several claims against both dTech and Theis jointly. Willsea claims (1) that Theis and

dTech have infringed his copyright by copying and authorizing copying of EDGAR Ease without his consent, (2) that Theis, dTech, and defendant Weeden exercise monopolistic control by virtue of their enforcement of the EDGAR Ease copyright, in violation of the Sherman Act; (3) that Theis and dTech have converted proceeds, from sale and licensing of EDGAR Ease, which belong to Willsea; (4) that Theis and dTech owe Willsea an accounting of proceeds from the EDGAR Ease software; and (5) that Theis and dTech hold 50% interest in the EDGAR Ease copyright in constructive trust for Willsea. Again, each of these causes of action presumes that Willsea is a co-author of the copyrighted work.

For reasons that are not entirely clear to the Court, Willsea raises these claims in a separate action rather than as defenses and counterclaims in the action brought by dTech against Willsea and NFS.

DISCUSSION

Defendants move to dismiss the Complaint, arguing, *inter alia,* that Willsea's current claim of co-authorship is precluded by the 1996 Action and the 1996 Settlement, by applicable statutes of limitation, and by the doctrine of laches; that Willsea's claims for unjust enrichment, conversion, for an accounting, and for a constructive trust fail because Willsea cannot maintain that he is a co-author of the copyrighted work; that Willsea cannot state a claim against Theis or dTech for copyright infringement; and that the Sherman Act claim is barred by the 1996 Action and the 1996 Settlement, and fails to state a claim because defendants are merely exercising the monopoly that is statutorily conferred by the copyright law. In addition, defendants move for costs and attorneys fees pursuant the Copyright Act, 17 U.S.C. § 505. Plaintiff cross-moves for sanctions pursuant to Federal Rule of Civil Procedure 11.

I. MOTION TO DISMISS

A. Legal Standard

*4 The Court should grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheuer v. Rhodes,* 416 U.S. at 236; *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). "Under Rule 12(b)(6), 'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." ' *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed.1984)). I accept as true all well-pleaded factual allegations in the Complaint and view them in the light most favorable to plaintiffs. *See Papasan v. Allain,* 478 U.S. 265, 283 (1986). However, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (internal quotation and citation omitted).

It is well established that the Court may rely upon matters of public record in deciding a Rule 12(b)(6) motion. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (district court may consider documents integral to plaintiff's claim and of which plaintiff had notice); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (district court may examine public disclosure documents).

B. Statute of Limitations for Claiming Co-Authorship

Stripped to its essence, Willsea's complaint alleges one core fact on which all of the claims depend--that Willsea and Theis co-authored EDGAR Ease. Defendants argue that Willsea cannot maintain an action to be declared a co-author, or bring claims that depend upon proving co-authorship status, because the statute of limitations for claiming co-author status has elapsed.

Claims of co-authorship and co-ownership arise under the federal Copyright Act *see* 17 U.S.C. § 201(a), and are governed by that Act's three year statute of limitations. 17 U.S.C. § 507(b); *Merchant v. Levy,* 92 F.3d 51, 55-56 (2d Cir.1996). The Second Circuit has held that "plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Merchant,* 92 F.3d at 56. Causes of action accrue "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Id.*

The parties dispute when Willsea had reason to know of his alleged injury. Defendants argue that the cause of action accrued at the time Theis filed his claim of copyright ownership in February 1994. Plaintiff contends that the cause of action accrued in 1996 when plaintiff received the Complaint in the

1996 Action which alleged Theis was the sole author of the copyright in EDGAR Ease. The 1996 Complaint appended Theis's copyright registration form, listing him as sole author and owner, as well as a copy of the start-up screen for Edgar Ease which lists Theis as the copyright holder.

*5 The defendants have the sounder argument. Co-authors know their status as authors from the time the copyrighted work is created. *Id.* Moreover, once an author registers his copyright, any co-author exercising reasonable diligence should be aware that another person has claimed authorship and thus know of his alleged injury. *See Margo v. Weiss,* No. 96 Civ. 3842, 1998 WL 2558, at * 5 (S.D.N.Y. Jan. 5, 1998) (finding cause of action for authorship accrues when copyright registered). This is especially true in a case, such as this, where the plaintiff was an employee of the company that markets the copyrighted software and he made regular use of the software. Because Theis registered his copyright in EDGAR Ease in 1994, Willsea's cause of action for a declaration of copyright authorship accrued in 1994 and elapsed three years later. Willsea's current action, brought in 1998, is time barred unless Willsea can present reasons why the statute of limitations should be tolled.

The doctrine of equitable tolling applies to toll the statute of limitations where the plaintiff was justifiably ignorant of his cause of action. *See Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60 (2d Cir.1986). To establish justifiable ignorance, Willsea maintains that Theis committed fraud by failing to tell Willsea that he was registering EDGAR Ease in his name only; by so registering the EDGAR Ease copyright with the Copyright Office; [FN2] by omitting to inform Willsea about the profits derived from sale, licensing, and assignment of EDGAR Ease and the copyright; and by retaining all of the proceeds for himself. Willsea also alleges that Theis had a fiduciary duty to Willsea as co-author of EDGAR Ease, and that Theis breached this duty by not advising Willsea that he was registering the EDGAR Ease copyright solely in his own name, by intentionally failing to list Willsea as co-author on the registration form, by failing to advise Willsea that he did not so list Willsea, and by converting the full profits from EDGAR Ease to himself. Although styled as separate causes of action for fraud and for breach of fiduciary duties, the entire import of these arguments is to toll the statute of limitations and allow Willsea to state an otherwise untimely cause of action for co-authorship status. [FN3]

FN2. To the extent that Willsea alleges Theis committed fraud on the Copyright Office, thereby invalidating the copyright, the Court rejects the allegation. As discussed *infra,* assaults on the validity of Theis's copyright and his assignment to dTech are foreclosed by the resolution of the 1996 Action.

FN3. Defendants also argue that any contributions Willsea made to EDGAR Ease would constitute works for hire, vesting authorship in dTech. This argument relies on facts not pled about Willsea's working relationship with Theis, the circumstances under which the work on EDGAR Ease was undertaken and performed, and the existence or non-existence of an agreement between Willsea and dTech as to authorship of the program. Accordingly, whether Willsea's contributions to EDGAR Ease, if any, constituted work-for-hire is more properly decided on a motion for summary judgment or following trial.

Willsea does not allege that Theis materially misrepresented any facts to Willsea. Because the fraud and breach of fiduciary duty claims are premised exclusively on alleged omissions, rather than on affirmative misrepresentations to plaintiff, [FN4] they sound in fraudulent concealment. Under New York law, [FN5] a plaintiff alleging fraudulent concealment must plead and prove (1) that the defendant breached a duty to disclose; (2) the defendant had an intent to defraud; (3) the defendant reasonably relied on the defendant; and (4) damages. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 152 (2d Cir.1993). The existence of a fiduciary relationship can give rise to a presumption of fraudulent concealment, but the plaintiff must still establish that he exercised reasonable diligence to discover his claim. *See Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 119 (S.D.N.Y.1993).

FN4. The only affirmative misrepresentation alleged--Theis's statement on the copyright registration form that he was the sole author of EDGAR Ease--was not made to Willsea. Instead, this alleged misrepresentation is the basis of Willsea's claim of fraud on the Copyright Office.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

> FN5. The parties do not address the source of law to determine the alleged breach of fiduciary duty and the alleged fraud. Because Willsea, Theis and Weeden are all New York residents, because dTech is a New York corporation with its principal place of business on Wall Street, and because all of the relevant events--except filing of the copyright registration--occurred in New York, the Court applies New York law.

*6 There are at least three serious obstacles that plaintiff must overcome to prove his claim of co-authorship. First, plaintiff must establish that Theis had a duty to disclose. The sole intimation of such duty lies in plaintiff's allegation that Theis was a fiduciary of Willsea. That contention rests, in turn, entirely upon the co-author status the two men allegedly shared. It is doubtful that co-authorship creates a fiduciary relationship. See *Margo v. Weiss,* No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y.1998) (rejecting plaintiff's claim that co-authorship creates fiduciary relationship). Judge Mukasey reasoned that the sole duty that co-authors owe one another under the Copyright Act is for an accounting.

The Court is, however, mindful that the existence of a fiduciary relationship depends upon the peculiar facts of a particular relationship. See *Manela v. Garantia Banking Ltd.,* 5 F. Supp .2d 165, 180 (S.D.N.Y.1998) (gathering cases). The posture of a Rule 12 motion is poorly suited to deciding whether Willsea reasonably reposed in Theis such trust and confidence as to give rise to fiduciary duties. Although the question is close, the Court finds that Willsea has sufficiently alleged existence of a fiduciary relationship to withstand an adverse judgment on the pleadings.

Second, assuming Willsea can establish a fiduciary relationship, he must still establish that Theis intended fraudulently to conceal the fact that Theis claimed sole ownership of the copyright in EDGAR Ease. Defendants aver that since the program was first developed the start up screen for EDGAR Ease has contained a copyright notice listing Theis--and only Theis--as holding the copyright. Such a public proclamation of sole authorship will likely defeat any claim that Theis intended to fraudulently conceal his claim of sole authorship. Moreover, defendants assert that Willsea had to have seen the copyright notice at least three years prior to bringing suit, so that his claim accrued by 1994. Although the Court finds defendants' assertions persuasive, they rest on material not included in the pleadings and therefore cannot form the basis for deciding the current motion to dismiss. Third, Willsea has the burden to establish his own diligence in seeking to discover the fraud and his claim. Given the relative ease with which Willsea could have discovered the registration form filed by Theis, he will have a difficult time establishing his own due diligence. That difficulty will be even greater if the defendants can establish that the program start-up screen listed Theis as the sole copyright holder. These are, however, considerations more appropriately resolved on a factual record, either in the posture of a motion for summary judgment or at trial.

Although the question is a close one, the Court concludes that plaintiff has alleged sufficient facts to state claims for fraud and breach of fiduciary duty, thus making dismissal on limitations grounds premature. [FN6]

> FN6. Defendants also assert as an affirmative defense the equitable doctrine of laches. Although the pertinent statute of limitations is not dispositive of the laches defense, it is a relevant factor. See *DeSilvio v. Prudential Lines, Inc.,* 701 F.2d 13, 15 (2d Cir.1983) (citation omitted). Also important to the laches defense is whether plaintiff's delay in bringing his action is excusable. *Id.* Accordingly, the reasons given for denying the motion to dismiss on statute of limitations grounds also counsel against dismissal on the ground of laches.

C. Preclusive Effect of the 1996 Action and Accompanying Release

*7 In 1996, dTech brought an action against Willsea and his corporation, NFS, for, *inter alia,* copyright infringement, breach of fiduciary duty, and unfair trade practices. That lawsuit was resolved by a stipulated order of dismissal with prejudice. In addition, Willsea and NFS executed a release of claims in connection with the settlement. Defendants assert that Willsea's current claim of co-authorship was a compulsory counterclaim that should have been brought in the 1996 Action. Defendants therefore reason that the co-authorship claim, and all

claims stemming from co-authorship, are barred by the doctrine of *res judicata*.

The parties dispute the preclusive effect of the 1996 Action on Willsea's claims pressed in the present suit. As the Second Circuit recently observed, "[o]rdinarily, a stipulation of dismissal 'with prejudice' as to a pending action is unambiguous; like any such dismissal, it is 'deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit." ' *Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir.1997) (quoting *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.*, 105 F.3d 72, 78 (2d Cir.1997)). Moreover, courts generally will not look behind the plain language of the stipulation in order to limit its effect. *See id.*

Although the term *res judicata* is used to describe the preclusive effect of a stipulated dismissal, because the claims at issue are not decided by the court they are more properly understood to be the subject of contractual agreement among the parties. Under New York law, [FN7] the preclusive effect of a stipulation of dismissal is governed by ordinary contract principles. *See Dunleavy v. First American Title Insurance Co. of New York*, 117 A.D.2d 952 (N.Y.App.Div.1986). Moreover, whether a contract is ambiguous in the first place is a question of law. *See W.W.W. Assocs.. Giancontieri*, 77 N.Y.2d 157, 162 (1990); *Seiden Assocs. V. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir.1992) Conf. Ag. ¶ 13 (specifying that agreement "shall be governed by and construed in accordance with the laws of the State of New York"). Contract terms are not rendered ambiguous simply because the parties posit differing interpretations of them. *See Seiden*, 959 F.2d at 428 (construing New York law).

FN7. *See* supra note 5.

Both the stipulated order of dismissal with prejudice, and the accompanying release of claims, are broadly worded and unequivocal. The stipulation purports to resolve "[a]ll claims and counterclaims which have been, could have been or could otherwise hereafter have been asserted herein" (Theis Decl. ¶ 8 & Ex. 3 (Settlement Agreement ¶ 12)); the release governs "any claims, counterclaims or causes of action which were or could have been asserted in, or which arises [sic] for any of the facts or transactions that form the basis for any claim or counterclaim set forth in any pleading filed" in the 1996 Action. (*See* Theis Decl. ¶ 9 & Ex. 4.) The stipulation and the release both express the parties' unequivocal intent to preclude future litigation of all claims that could have been raised in the 1996 Action. [FN8]

FN8. Because the Settlement Agreement and the Release both purport to dispose of all claims which "could have" been brought, it does not matter whether Willsea's present claims would have been permissive rather than compulsory counterclaims in the 1996 Action. Both sorts of claims are precluded.

*8 Willsea's current claim to be a co-author of the EDGAR Ease software clearly could have been raised in the 1996 Action. The core of that action was a claim for infringement of the Help software. The copyright in the Help program was expressly predicated on a copyright in the EDGAR Ease program. dTech's copyright in EDGAR Ease was, in turn, predicated on an assignment of rights from defendant Theis.

The Settlement Agreement and Release were plainly intended to resolve dTech's rights to enforce the copyright as against Willsea and NFS. That intention is further confirmed by the actions that Willsea and NFS agreed to undertake as part of the settlement. In the Settlement Agreement, Willsea and NFS promise to (1) return to plaintiffs and erase from their computers all versions of the EDGAR Ease software and all security programming codes for the software; (2) refrain for one year from offering EDGAR conversion services or training in the use of EDGAR Ease, and from soliciting similar business from delineated companies; and (3) purchase two copies of EDGAR Ease from plaintiff, refrain from purchasing or copying copies of EDGAR Ease from any other source, and utilize EDGAR Ease only in accordance with the license provided with the purchase of each copy of the EDGAR Ease software. [FN9]

FN9. Willsea's current position that ownership of the copyright in EDGAR Ease was irrelevant to the 1996 Action is belied by his conduct of the 1996 Action, the terms of the stipulated order of dismissal, and the terms of the release executed by Willsea. Willsea and NFS served an Answer in the 1996 Action. The Answer claimed that the copyrights in both EDGAR Ease itself and in the Help software were invalid, even

though the Complaint only alleged infringement of the copyright in the Help software. Moreover, Willsea and NFS sought as relief a declaration from the Court canceling any copyright in EDGAR Ease.

Both the Settlement Agreement and the Release unambiguously bar future litigation over dTech's right to enforce its copyright in EDGAR Ease against Willsea and NFS. Accordingly, Willsea is precluded from litigating his present claims, all of which rely on his assertion of co-authorship status, against dTech.

Willsea does not seriously contend otherwise. He argues that his claims for co-authorship, fraud, breach of fiduciary duty and unjust enrichment apply only to defendant Theis. Nevertheless, Willsea presses claims for conversion, for an accounting, for a constructive trust, for copyright infringement and, for antitrust violations against both Theis and dTech. These claims all stem from Willsea's asserted ownership interest in Edgar Ease. Those claims as against dTech are precluded by the 1996 Agreement and release. Willsea's claims against dTech are therefore dismissed.

A different result obtains with respect to defendants Theis and Weeden. Neither of them were parties to the 1996 Action, and neither were parties to the Settlement Agreement. Nor does the Release, executed by Willsea and NFS, purport to bar claims against Theis or Weeden; it releases claims against dTech only. Unless there is some additional ground for dismissal of these claims as against Theis or Weeden, the claims against the two individual defendants will remain in the lawsuit.

D. Unjust Enrichment, Conversion, Accounting, Constructive Trust

Willsea brings causes of action for unjust enrichment against Theis; and for conversion, an accounting, and for a constructive trust against Theis and dTech. These claims require little discussion. The sole basis for these causes of action is Willsea's alleged status as co-author and copyright holder, and the sole argument for dismissing these claims is Willsea's inability to claim co-authorship. Because the Court considers it premature to dismiss Willsea's cause of action for a declaration of copyright authorship and ownership, the motion to dismiss these derivative claims must also be denied as against defendant Theis.

*9 With respect to defendant dTech, however, these claims are barred by the Settlement Agreement and by the Release. Under the terms of both the Settlement Agreement and the Release, Willsea and NFS agreed to purchase copies of EDGAR Ease from dTech and use those copies only in accordance with the applicable license. These arrangements confirm the clear intention of the parties to the 1996 Action to resolve any claims of ownership in EDGAR Ease as between dTech and Willsea. Accordingly, Willsea's claims to proceeds from the sale or licensing of EDGAR Ease are limited to a share of Theis's proceeds.

E. Copyright Infringement

Willsea alleges that Theis and dTech have infringed his copyright by reproducing and licensing EDGAR Ease without his consent. The claim is meritless. Willsea concedes--indeed he affirmatively alleges-- that Theis is at least a co-author of EDGAR Ease. It is well-settled that co-authors have no claim of infringement against one another. See *Weisman v. Freeman*, 868 F.2d 1313, 1318 (2d Cir.1989). Because Theis is concededly an author and owner of the copyright, his assignment to dTech is valid. Moreover, as previously discussed, resolution of the 1996 Action established the legitimacy of dTech's rights in the copyrighted work.

Willsea concedes that one co-owner cannot sue another co-owner for copyright infringement. He nevertheless advances the audacious argument that Theis's copyright is invalid because Theis purportedly defrauded the copyright office into believing he was the sole author of the copyright. [FN10]

> FN10. The defendants apparently concede that fraud on the Copyright Office can result in stripping an owner of his copyright. The Court notes that the cases cited by Willsea involve fraud of a decidedly different nature than is alleged here. In every case cited, and in every case the Court has discovered, fraud sufficient to invalidate a copyright consisted of falsely representing prior works on which the copyrighted work was based. It is not surprising that, upon discovery that the work was not original, the copyright would be voided. Here, however, there is no dispute that the EDGAR Ease program is an original work deserving of copyright protection. Instead, Willsea asserts that Theis's claim of

sole authorship constitutes fraud. The Court has not discovered any case in which failure to list a co-author in registering a copyright led to invalidating the copyright. Moreover, the Copyright Act provides the mechanism for co-authors to vindicate their rights when they are not included in the copyright registration--they may bring an action for a declaration that they are co-authors, as Willsea has done here. Nevertheless, because the Court finds that the copyright claim is precluded by the Settlement Agreement and the Release, the Court does not decide whether the sort of fraud alleged here can invalidate a copyright.

Willsea's argument that "dTech and Theis have no rights to EDGAR Ease!" is foreclosed by the the Settlement Agreement and the Release. Although the 1996 Action alleged infringement of the Help software, dTech's rights to enforce the copyright were predicated on an assignment of the license in EDGAR Ease. [FN11] The Court rejects as unsupported and untimely plaintiff's bald assertion that Theis's assignment of rights to dTech was a sham transaction. That assignment formed the core of the 1996 Action. Plaintiff should have raised the issue in that litigation. He not only failed to do so, he affirmatively agreed to deal with dTech as a valid holder of copyright interests in EDGAR Ease. Because dTech's rights to enforce the copyright presume Theis's rights to do so, the Court finds that this claim of infringement is barred as against Theis as well.

FN11. The assignment agreement was itself appended to the Complaint in the 1996 Action. (*See* Theis Decl. Ex. 1 (Complaint ¶ 10 & Ex. C thereto).) The agreement assigns all of Theis's rights in "the Product" to dTech, and in turn defines "the Product" as "EDGAR Ease." Given the circumstances surrounding the 1996 Action--that dTech's right to enforce the copyright at issue in the 1996 Action derived from the assignment of rights in EDGAR Ease, that Willsea agreed (and was ordered) to return all unauthorized copies of EDGAR Ease, that he agreed to purchase copies legitimately and to use those copies only in accordance with the relevant licensing agreement--Willsea cannot now challenge the validity of Theis's copyright or the assignment to dTech. His claims are appropriately limited to recovering a share of Theis's proceeds from exploitation of the copyright.

Accordingly, defendants' motion to dismiss the claim for copyright infringement is granted.

F. Alleged Violations of the Sherman Act

Willsea alleges violations of both Section 1 and 2 of the Sherman Act.

1. Combination of Conspiracy in Restraint of Trade.

Section 1 makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations." 15 U.S.C. § 1. Willsea alleges that dTech, Theis, and Weeden have formed an illegal combination in restraint of trade. This assertion is unaccompanied by any supporting factual allegations.

*10 Defendants argue persuasively that Theis, Weeden, and dTech cannot conspire with one another because Theis and Weeden are officers of dTech. Willsea fails to allege any facts to remove this case from the settled rule that corporate officers acting within the scope of their employment cannot conspire with their corporate employers within the meaning of Section 1 of the Sherman Act. *See Fogel v. Metropolitan Life Ins. Co.*, 871 F.Supp. 571, 574 (E.D.N.Y.1994), *aff'd*, 122 F.3d 1056 (2d Cir.1995) (table opinion). Accordingly, defendants' motion to dismiss the claim for violation of Section 1 of the Sherman Act is granted. Moreover, because this claim is the sole cause of action asserted against defendant Weeden, defendants' motion to dismiss the Complaint as against defendant Weeden is granted.

2. Monopoly in Restraint of Trade.

Section 2 of the Sherman Act provides that:
[e]very person who shall monopolize, or attempt to monopolize ... any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Plaintiff's cause of action for violation of Section 2 of the Sherman Act rests entirely upon his attempt to invalidate Theis's and dTech's interests in the EDGAR Ease copyright through his allegations of fraud on the Copyright Office. Willsea reasons that if Theis's copyright is invalid, Theis's and dTech's enforcement of the copyright constitutes unlawful monopolistic behavior.

Based on the resolution of the 1996 Action, the defendants assert that principles of *res judicata* bar the antitrust claims. Willsea argues that his antitrust claim was not a compulsory counterclaim in the 1996 infringement action so that it can be raised in subsequent litigation. In support of this proposition, Willsea relies upon the doctrine of patent misuse enunciated in *Mercoid Corp. v. Mid-Continent Investment Co., See* 320 U.S. 661, 665 (1944). In *Mercoid,* the Supreme Court held that, in attempting to use one's legitimate patent monopoly to gain monopoly power in a related market, the patent holder misuses his patent in violation of the antitrust laws. *Id.*

*Mercoid* limited, in two distinct ways, the preclusive effect given to prior infringement judgments in subsequent suits alleging antitrust violations. First, the Court held that a court of equity may refuse to enforce an unlawful extension of the patentee's monopoly. *See id.* 669 (applying *Morton Salt Co. v. G.S. Suppinger Co.,* 314 U.S. 488, 492 (1942)). This holding is grounded not on the private litigant's rights or interests, but on the equity court's role to safeguard the public interest secured by the antitrust laws. *See id.* at 670. As the Court noted,

> *11 the determination of that [public] policy not "at the mercy" of the parties, nor dependent on the usual rules governing the settlement of private litigation. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the puclic interest than they are accustomed to go when only private interests are involved."

*Id.* (citations omitted).

The *Mercoid* Court employed different reasoning to allow the petitioner's claim at law for damages under Section 4 of the Clayton Act. As to the damages claim, private interests of the petitioner, rather than the public interest in disallowing monopolies in restraint of trade, were at issue. The Court did consider the *res judicata* affect of the petitioner's failure to raise its damages claim in the prior action.

> What we have just said does not, of course, dispose of Mercoid's counterclaim for damages.... The fact that [the damages claim] might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure ... does not mean that its failure to do so renders the prior judgment res judicata as respects it.

*See id.* at 670-71 (citations omitted).

Assuming that there is an equivalent doctrine of "copyright misuse," there is no basis for asserting the claim here. [FN12] Following the reasoning of *Mercoid,* the Court distinguishes between claims for injunctive relief from an infringement claim--- which vindicate the public interest--and claims for antitrust damages--which vindicate Willsea's private interests. Willsea seeks only monetary damages at law. Consistent with *Mercoid* and its progeny, settlement of prior litigation may preclude subsequent collateral attack in the form of a claim for damages.

> FN12. The parties dispute whether the *Mercoid* and *Morton Salt* doctrine of "patent misuse" applies to copyright infringement actions. The Supreme Court has implied that it does, approving a lower court's borrowing of the patent misuse doctrine to invalidate a "block-booking" arrangement whereby the holder of copyrights in certain films conditioned the granting of licenses to show the film upon the purchase or rental of other non- copyrighted films. *See United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 156-59 (1948). Because I find that preclusion of plaintiff's damages claim is consistent with *Mercoid,* I need not, and do not, decide whether there is a comparable "copyright misuse" doctrine.

It is true that *Mercoid* also held a claim for antitrust damages was a permissive, rather than a compulsory, counterclaim governed by Federal Rule of Civil Procedure 13(b). The Court therefore found that principles of *res judicata* did not bar its subsequent litigation in a collateral proceeding. Here, however, the grounds for preclusion differ. Defendants are properly understood to rely on the contractual waiver of the claim in the Settlement Agreement and the Release, not on the *res judciata* grounds of failure to raise a compulsory counterclaim in prior litigation. The distinction between compulsory and permissive counterclaims is entirely irrelevant here because

Willsea settled and released all claims which "could have" been brought, not just those which "must have" been brought.

Willsea makes two additional arguments that, if accepted, would justify allowing the claim for violation of Section 2 of the Sherman Act to proceed. They require only brief discussion.

First, Willsea argues that Theis and Weeden were neither parties to the Settlement Agreement, nor beneficiaries of the Release. He therefore reasons that the claims as against the two individual defendants are not precluded. This argument would carry some force if Willsea had alleged facts to suggest that Theis and Willsea had themselves violated Section 2 of the Sherman Act. [FN13] Instead, the sole factual basis for the Section 2 claim is that *dTech* has acted in a predatory fashion by suing Willsea and NFS for infringement.

> FN13. As the Court noted, the alleged violation of Section 1, by virtue of a conspiracy or combination in restraint of trade, fails to state a claim because Willsea does not allege facts that would remove his claim from the rule that corporate officers acting within the scope of their employment cannot conspire with the corporation for purposes of Section 1 of the Act.

*12 Second, Willsea argues that its claims for antitrust violation against dTech are not covered by the Settlement Agreement and Release because the injuries alleged arose after the 1996 Action was settled. This argument is nonsense.

Willsea does not allege an unlawful tying arrangement that extends the copyright in EDGAR Ease beyond its legitimate scope. Instead, Willsea's antitrust claims depend entirely upon his assertion that dTech does not hold a legitimate copyright in EDGAR Ease because of Theis's alleged fraud on the Copyright Office. This fraud is, in turn, entirely dependent on Willsea proving he was a co-author of EDGAR Ease.

These claims of co-authorship and fraud were equally available to Willsea in the 1996 Action; his waiver of all claims which he "could have" brought against dTech plainly includes his claim of co-authorship and his resulting antitrust defense and counterclaim. Moreover, Willsea went beyond merely waiving these claims against dTech in the Settlement Agreement and the Release; he affirmatively agreed to return all copies of EDGAR Ease unlawfully obtained, to purchase two copies of EDGAR Ease, and to use and copy the program only in accordance with the license granted pursuant to his purchase. (*See* Settlement Agreement (Theis Decl. Exs. 3 & 4).) Willsea plainly contracted to deal with dTech as holder of the copyright in EDGAR Ease. Moreover, Willsea argues that dTech *continues* to enforce the copyright, not that dTech made no attempts to enforce the copyright prior to settlement of the 1996 Action. [FN14] Accordingly, the Court rejects Willsea's characterization of his claim as one focusing upon post-settlement misconduct.

> FN14. Willsea does not allege that the Settlement Agreement and the Release were fraudulently procured. Nor can Willsea maintain that he discovered Theis's alleged fraud on the Copyright Office--the basis for his claim that dTech's copyright is invalid-- only after he agreed to settle the 1996 Action and execute the Release. In the 1996 Action, dTech based its rights in EDGAR Ease on an assignment from Theis. The 1996 Action Complaint relied upon, and appended, Theis's application to register the copyright-- the same form that Willsea alleges defrauded the Copyright Office. Willsea thus knowingly waived his current claims against dTech. Indeed, the only new conduct that dTech is alleged to have taken is bringing the 1998 dTech action against Willsea. The Complaint in that action alleges new acts of infringement and breach of the Settlement Agreement. In bringing its pending action, dTech does nothing more than attempt to enforce the bargain Willsea made in settling the 1996 Action.

Because the 1996 Action and Willsea's contemporaneous release of claims against dTech foreclose challenges to the validity of dTech's copyright interests, Willsea's antitrust cause of action will be dismissed. [FN15]

> FN15. The Court does not decide whether Willsea is precluded from asserting an antitrust claim to bar award of injunctive relief to dTech in its pending infringement action against Willsea. Such a defense

would be limited to demonstrating that the Court should, in equity, decline to enforce the copyright. *See, Mercoid Corp. v. Mid-Continent Investment Co.,* 320 U.S. 680, 684 (1944) (court of equity ought not enforce patent so as to subvert public policy embodied in antitrust laws). As a practical matter, Willsea gains the benefit of this equitable relief whether or not he asserts antitrust violations because his antitrust claim presumes he is a co-author. If Willsea proves his co-authorship, no infringement claim will lie against him on that basis alone.

### III. COSTS, ATTORNEYS FEES & SANCTIONS

Defendants move for an award of attorneys fees and costs, pursuant to 17 U.S.C. Section 505, arguing that plaintiff's claims of co-authorship and copyright infringement are "patently frivolous and objectively unreasonable." (Pl. Mem. at 34.) Section 505 allows the court to award costs and attorneys' fees to the prevailing party in a copyright action. Plaintiff has asserted a number of claims under the Copyright Act, including one for infringement, one for a declaration of co-authorship and co-ownership, and one for an accounting. Although the Court dismisses the infringement claim, the motion to dismiss has been denied with respect to the other two copyright claims. It is thus premature to determine that the defendants have prevailed on the Copyright claims. Accordingly, the defendants' motion for costs and fees pursuant to 17 U.S.C. § 505 is denied without prejudice to refile following resolution of the remaining claims brought under the Copyright Act.

In addition to moving for costs and fees on the copyright claims, defendants move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Relying on the bases for their motion to dismiss the Complaint--and, in particular, the 1996 Action and settlement--defendants assert that neither plaintiff nor plaintiff's counsel could have had a good faith belief that the Complaint advances non-frivolous grounds for recovery.

*13 The Court denies defendants Rule 11 motion without prejudice. Although the claims brought against dTech are clearly unreasonable, given the unambiguous language of the Settlement Agreement and the Release executed in the 1996 Action, the Court is unable to determine at this juncture whether the claims brought against Theis are similarly frivolous. Given the Court's denial of defendants' motion to dismiss most of the claims as against Theis, the motion for fees and costs is, at the least, premature. Accordingly, the Court denies defendants' motion for Rule 11 sanctions without prejudice. Should the Court determine on a more complete record that plaintiff's claims were frivolous, and that plaintiff had no good faith basis to assert them, the Court will award appropriate costs and fees upon defendants' motion.

Plaintiff moves for sanctions, pursuant to Federal Rule of Civil Procedure 11, arguing that defendants' motion to dismiss is frivolous. The Court disagrees. Defendants' have raised colorable grounds for dismissal. The core argument that plaintiff relies upon--that he is co-author of EDGAR Ease--may well prove to be time-barred upon a more complete record, resulting in the dismissal of plaintiff's claims as against defendant Theis. Accordingly, plaintiff's motion for sanctions is denied with prejudice.

### III. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss the Complaint is granted to the extent of dismissing the claims for copyright infringement and antitrust violations as against all defendants, and is granted to the extent of dismissing all claims as against defendants dTech and Weeden, but is denied with respect to the remaining claims as against defendant Theis. Defendant's motion for costs and attorneys fees pursuant to Section 505 of the Copyright Act is denied without prejudice. Defendant's motion for Rule 11 sanctions is also denied without prejudice.

The parties are directed to submit to the Court, on or before August 19, 1999 a revised case management plan for further proceedings in this action and in *Document Techs., Inc. v. Willsea and National Filing Servs., Inc.,* 98 Civ. 4519(BSJ). The two actions are and will be consolidated for purposes of discovery and trial.

SO ORDERED:

1999 WL 595629, 1999 WL 595629 (S.D.N.Y.), 1999-2 Trade Cases P 72,616, 1999 Copr.L.Dec. P 27,974

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works