UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INCREDIBLY EDIBLE DELITES, INC. and INCREDIBLE FRANCHISE CORPORATION, | : : : : | CIVIL ACTION NO. 3:02CV1529 (AVC) |
| Plaintiff, | : : | |
| V. | : : | |
| EDIBLE ARRANGEMENTS, LLC., and EDIBLE ARRANGEMENTS FRANCHISE GROUP, | : : : : | |
| Defendants. | : | MAY 13, 2004 |

## EDIBLE ARRANGEMENTS FRANCHISE GROUP, INC.'S AND EDIBLE ARRANGEMENTS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HALLORAN & SAGE LLP
Thomas J. Finn
Federal Bar No. ct 20929
Paula Cruz Cedillo
Federal Bar No. ct 23485
One Goodwin Square
Hartford, Connecticut 06103
(860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7(a)(1) of the Local Civil Rules of the District Court for the District of Connecticut, the defendants, Edible Arrangements Franchise Group, Inc., and Edible Arrangements, LLC (collectively "EA"), respectfully submit this memorandum of law in support of their Motion for Summary Judgment, dated May 13, 2004 ("Motion").

This action is an improper attempt by the plaintiffs, Incredibly Edible Delites, Inc. and Incredible Franchise Corporation (collectively "IED"), to re-litigate issues previously settled in a prior lawsuit between the parties. The parties agreed to a broadly-reaching settlement agreement, releasing each other from claims -- known or unknown -- that could have been brought in the prior action. The activities and use about which IED now complains -- the terms on EA's website's domain name and metatags, and its conduct regarding certain search engines (none of which constitutes unlawful or infringing use) -- have been ongoing since <u>before</u> the prior action was settled, as well as the fact that IED's claims are based upon a factual predicate virtually identical to that alleged in the prior action. As such, IED's claims are precluded by both the parties' settlement agreement and the doctrine of res judicata. EA is therefore entitled to judgment as a matter of law.

## FACTS

Tariq Farid ("Mr. Farid") is the President of both Edible Arrangements, LLC, and Edible Arrangements Franchise Group, Inc. See Affidavit of Tariq Farid, dated October

- 2 –



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

30, 2002 ("Farid Affidavit")[1] at ¶ 1.  Mr. Farid originally started in the floral business in the 1980s.  See Farid Affidavit at ¶ 2.  Over the years, Mr. Farid provided fruit and flower arrangements to his customers, often selling items consisting of a basket of fruit accompanied by varied floral arrangements.  See Farid Affidavit at ¶ 3.

By 1993, Mr. Farid's flower shops, Farid, Inc., d/b/a Farid's Flowers ("Farid's Flowers"), had begun using computer software made specifically for the floral industry by Daisy Systems, Inc.  See Farid Affidavit at ¶¶ 2, 4.  This software assisted in the processing of orders and accounts for the floral industry, and had nothing to do with floral arrangements themselves.  See Farid Affidavit at ¶ 4.  In 1993, Mr. Farid incorporated a computer software company called Northeast Systems Group, Inc., and sold software for, among others, Daisy Systems, Inc., in the northeastern United States. See Farid Affidavit at ¶ 4.

Mr. Farid had no involvement with IED until approximately 1997.  See Farid Affidavit at ¶ 5.  At that time, IED requested software to assist in its business operations from Daisy Systems, Inc.'s successor corporation, Teleflora, Inc., which, in turn, referred IED to Mr. Farid, given his location in the northeast.  See Farid Affidavit at ¶ 5. Accordingly, Mr. Farid visited IED's main office in Pennsylvania to assist in the installation of a software system for IED that would assist IED in the processing of

---

[1] The Farid Affidavit submitted in support of EA's Motion for Summary Judgment contains the same averments as those of the Affidavit of Tariq Farid in Support of Defendant Edible Arrangements Franchise Group, Inc.'s and Edible Arrangement LLC's Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Edible Arrangements Franchise Group, Inc.'s and Edible Arrangement LLC's Motion to Dismiss, dated October 30, 2002, which affidavit was previously filed with the Court in connection with this action.

- 3 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

orders and accounts.  See Farid Affidavit at ¶ 6.  After 1997, Mr. Farid had very little contact with IED.  See Farid Affidavit at ¶ 9.  Such contact was only initiated by IED, and solely involved IED's desire to obtain Mr. Farid's assistance with IED's computer systems.  See Farid Affidavit at ¶ 9.

The employees at Farid's Flowers began experimenting with fruit arrangements after seeing an advertisement on a television shopping channel for a book on how to make fruit arrangements by cutting fruit into different shapes.  See Farid Affidavit at ¶ 10.  The tools were all purchased from a kitchen supply store that sold, among other things, generic tools for cutting fruit.  See Farid Affidavit at ¶ 10.  The fruit itself was purchased retail.  See Farid Affidavit at ¶ 10.  By December 1998, Farid's Flowers' employees had designed several fruit arrangements and began selling the fruit arrangements from Farid's Flowers from December 1998 to March 1999.  See Farid Affidavit at ¶ 11.  In March 1999, upon the great customer and family member response to these fruit arrangements, Mr. Farid registered Edible Arrangements, LLC, in Connecticut, and began selling fruit arrangements under that name.  See Farid Affidavit at ¶ 11.

**The Prior Action**

In July 1999, IED sent EA a "cease-and-desist" letter, claiming that EA was engaging in various infringing activities, including activities with respect to IED's website at "fruitflowers.com," by virtue of selling fruit arrangements allegedly similar to IED's fruit arrangements and by describing these items on its website.  See Farid Affidavit at ¶ 13;

– 4 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Correspondence from Alexis Dillett Isztwan, Esq., to EA, dated July 8, 1999 (attached to Farid Affidavit as Exhibit A). IED, however, possessed no intellectual property rights in the general development, production, or sale of fruit cut in the shape of flowers, or fruitflowers. As a result, in August 1999, in response to IED's cease-and-desist letter, EA commenced an action (the "Prior Action") against IED, seeking a declaratory judgment of non-infringement. See Farid Affidavit at ¶ 14. In March 2000, IED filed a Counterclaim, alleging claims of copyright infringement, unfair trade practices, and misappropriation of IED's proprietary information. See Farid Affidavit at ¶ 14; Counterclaim, dated March 22, 2000 ("Counterclaim") (attached to Farid Affidavit as Exhibit B). The Counterclaim set forth six paragraphs of allegations as the factual predicate for IED's infringement claims against EA. See Counterclaim at ¶¶ 29-34. These allegations detail Mr. Farid's purported interaction with IED in 1997. See Counterclaim at ¶¶ 29-34.

After substantial settlement negotiations, including two mediation sessions, IED and EA agreed to settle the Prior Action and, with both parties represented and advised by counsel, executed an expansive Settlement Agreement and Release, with an effective date of June 13, 2001 (the "Settlement Agreement"). See Farid Affidavit at ¶ 15; Settlement Agreement (attached to Farid Affidavit as Exhibit C). Prior to the settlement of the Prior Action, in September 1999, Kamran Farid, Mr. Farid's brother, after ensuring that the term "fruitflower" had not been trademarked, registered the domain name "fruitflower.com" with Network Solutions. See Farid Affidavit at ¶ 16;

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Printout of the domain name registration (attached to Farid Affidavit as Exhibit D); Affidavit of Kamran Farid in Support of Edible Arrangements Franchise Group, Inc.'s and Edible Arrangement LLC's Motion for Summary Judgment, dated May 13, 2004 ("Kamran Farid Affidavit"), at ¶ 2.  Additionally, prior to, and at the time of, the execution of the Settlement Agreement, EA was using the term "fruitflower," as well as the terms "incredible," "edible," and "delite," on its website and in the metatags underlying EA's website.  See Farid Affidavit at ¶¶ 17, 19; Kamran Affidavit at ¶ 6; Copies of printouts of source code of EA's website on February 1, 2001, February 8, 2001, March 31, 2001, April 1, 2001, and May 18, 2001 (attached to Kamran Farid Affidavit as Exhibit B).

During the course of the parties' settlement negotiations, which included the exchange of several drafts and redrafts of a proposed settlement agreement, EA discovered that IED was using the phrase "edible arrangements" on its website.  See Farid Affidavit at ¶ 18.  EA thus demanded that IED not use the phrase "edible arrangements" on either IED's website or the website's metatags.  See Farid Affidavit at ¶ 18.  IED agreed to a provision in the Settlement Agreement that prohibited IED from "using the words 'edible arrangements' together in advertising or marketing specifically including, but not limited to, use in metatags."  See Settlement Agreement at ¶ 5(e).  IED did not obtain a similar prohibition on EA's use of the terms "fruitflower," "incredible," "edible," or "delite" on EA's website or the website's metatags, despite the fact that these terms were either on the metatags or EA's website itself at that time.  See Farid Affidavit at ¶¶ 17, 19; Settlement Agreement.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In entering into the Settlement Agreement, the parties were desirous of not only releasing each other from the claims pending in the Prior Action, but also of releasing both each other <u>and</u> their licensees from any further litigation regarding any and all claims -- known or unknown -- that could have been raised by either party during the Prior Action.  <u>See</u> Farid Affidavit at ¶ 23.  Specifically, the Settlement Agreement provides, in pertinent part:

> 7. the parties do hereby remise, release and forever discharge each other of and from any and all manner of action, causes of actions, suits . . . claims and demands of whatsoever nature in law, in equity, direct or indirect, <u>known or unknown</u>, matured or not matured, . . . <u>that each party had or may have had against the other</u> including any and all matters alleged or which could have been alleged in the Litigation.
>
> . . .
>
> 10. The signatories to this Settlement Agreement and Release represent and warrant that they have the power and authority to sign and enter this Settlement Agreement and Release and to bind themselves and/or their . . . licensees . . . .
>
> . . .
>
> 13. The parties agree that the terms of this Settlement Agreement and Release shall be made binding upon all licensees . . . of any right referred to herein, including but not limited to the copyrights referred to herein . . . .

<u>See</u> Settlement Agreement at ¶¶ 7 (emphasis added), 10, 13.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**The Instant Action**

Notwithstanding the foregoing provisions of the Settlement Agreement, IED commenced an action against EA on June 21, 2002, in the United States District Court for the Eastern District of Pennsylvania, alleging trademark infringement under both federal and state law, trademark dilution under both federal and state law, violation of the AntiCybersquatting Act, and unfair competition under state law. See Farid Affidavit at ¶ 24; Complaint, dated June 21, 2002 ("Complaint") (attached to Farid Affidavit as Exhibit J). The allegations regarding EA constituting the factual predicate on which IED's infringement claims are based are virtually identical to the factual predicate alleged in the Prior Action. Compare Complaint at ¶¶ 52-61 with Counterclaim at ¶¶ 29-34. IED now seeks relief for acts allegedly taken subsequent to the execution of the Settlement Agreement based on the same factual predicate as the relief it sought in the Prior Action. See Complaint.

The Court in the Eastern District of Pennsylvania transferred this entire action to this Court, finding that "[t]he present action for trademark infringement, false description or designation of origin, trademark dilution, and unfair competition involves issues of interpretation that, under the terms of the [Settlement Agreement], are properly resolvable in the original forum." See Order, dated August 23, 2002 (attached to Farid Affidavit as Exhibit L).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## ARGUMENT AND AUTHORITIES

**I. IED Is Precluded from Asserting Its Claims as a Matter of Law Because of the Prior Action**

The standard for granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established.  Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  See, e.g., Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (quoting Fed. R. Civ. P. 56(c));  Boy Scouts of Am. v. Wyman, 335 F.3d 80, 88 (2d Cir. 2003);  In re Bennet Funding Group, Inc., 336 F.3d 94, 99 (2d Cir. 2003).  A genuine issue as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Sadowski v. Dell Computer Corp., 268 F. Supp. 2d 129, 132-33 (D. Conn. 2003) (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992)).  All inferences must be drawn and the evidence must be construed in a light most favorable to the nonmoving party.  See Trammell, 338 F.3d at 161; Boy Scouts of Am., 335 F.3d at 88.  The burden rests with the moving party. See Sadowski, 268 F. Supp. 2d at 132.

**A. EA is Entitled to Judgment as a Matter of Law Because the Settlement Agreement Executed by the Parties Precludes All of IED's Causes of Action**

EA is entitled to judgment as a matter of law because IED's claims against EA are precluded by the express terms of the Settlement Agreement.  A plain reading of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Settlement Agreement clearly establishes that, by its execution of the agreement, IED agreed to release EA from the claims IED now asserts. As previously set forth, the parties agreed, in pertinent part, that:

> the parties do hereby remise, <u>release and forever discharge</u> each other of and from any and all manner of action, causes of actions, suits . . . claims and demands of whatsoever nature in law, in equity, direct or indirect, <u>known or unknown</u>, matured or not matured, . . . <u>that each party had or may have had against the other</u> including any and all matters alleged or which could have been alleged in the Litigation.

<u>See</u> Settlement Agreement at ¶ 7 (emphasis added). The parties further agreed that "the terms of this Settlement Agreement and Release shall be made binding upon all licensees, purchasers, assignees and transferees of any right referred to herein." <u>See</u> Settlement Agreement at ¶ 13.

In construing the preclusive effect of settlement agreements and releases, courts apply contract principles. <u>See</u> <u>generally</u> <u>Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.</u>, 252 Conn. 479, 497-506 (2000) (applying contract law to determine that scope of general release provisions in prior settlement agreement clearly and unambiguously precluded plaintiff's claims); <u>Pulcinello v. Consolidated Rail Corp.</u>, 784 A.2d 122, 124 (Pa. Super. 2001) (applying contract law to determine enforceability of settlement agreement). Accordingly, the language used in the Settlement Agreement "must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." <u>Tallmadge Bros.</u>, 252 Conn. 479, 499. A contract's terms are not rendered ambiguous merely because the parties

- 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

may proffer differing interpretations of those terms. See Willsea v. Theis, No. 98 Civ. 6773, 1999 WL 595629, at *7 (S.D.N.Y. Aug. 6, 1999) (attached hereto as Exhibit 1) (citing Seiden Assoc. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir. 1992)). "Especially in the context of commercial contracts, we assume that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements." Tallmadge Bros., 252 Conn. at 500.  Indeed, the parties specifically agreed that "the terms of the Settlement Agreement and Release are contractual and not a mere recital."  See Settlement Agreement at ¶ 11.

The language set forth in the foregoing provisions of the Settlement Agreement demonstrates the clear and unambiguous release of EA from an extremely broad array of claims, including the claims alleged in the instant Complaint.  The Settlement Agreement was an extraordinarily broad release, and IED's claims in the instant action can squarely fall within those claims "known or unknown" to IED which IED "had or may have had" against EA as of the date of the Settlement Agreement.  See Settlement Agreement at ¶ 7.  Indeed, the original cease-and-desist letter sent by IED on July 8, 1999, raised issues of infringement with respect to IED's www.fruitflowers.com website. See Exhibit A.  Accordingly, IED is precluded from asserting the instant claims against EA.  See Ruskay v. Waddell, 552 F.2d 392, 395-96 (2d Cir. 1977) (affirming grant of summary judgment because of the plain meaning of the parties' previous settlement, noting that "the language of the release is as general as language can be"); Willsea, 1999 WL 595629, at *7-8 (enforcing broad language in a settlement agreement

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

resolving "all claims and counterclaims which have been, could have been or could otherwise hereafter have been asserted herein" to preclude future litigation of all claims that could have been raised in the action giving rise to the settlement agreement); see also Augustine Med., Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367, 1371-73 (Fed. Cir. 1999) (citing United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118 (1907) and Johnson, Drake & Piper, Inc. v. United States, 531 F.2d 1037, 1047 (Ct. Cl. 1976)) (enforcing broad provision of settlement agreement against the plaintiff and construing release of "any and all claims that were or could have been asserted by [the plaintiff] in the [lawsuit giving rise to the settlement agreement]" to "constitute a waiver of all claims and causes of action arising under or by virtue of the contract . . . and of all claims based on events occurring prior to the date of the release").

The fact that IED did not specifically raise trademark infringement issues in the Prior Action does not mean that IED may now complain about EA's use of the Fruitflower or Incredibly Edible Delites Marks. EA registered the domain name "fruitflower.com" in September 1999. See Farid Affidavit at ¶ 16; Kamran Farid Affidavit at ¶ 2; Exhibit D. Additionally, by the time the Settlement Agreement was executed, EA had already begun using the terms "fruitflowers," "incredible," "edible," and "delite" in the metatags of its website. See Farid Affidavit at ¶ 17; Kamran Farid Affidavit at ¶ 6; Exhibit B attached to Kamran Farid Affidavit. Indeed, the parties discussed the use of certain terms and phrases on websites and metatags during the settlement

- 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

negotiations.  See Farid Affidavit at ¶ 18.  IED's failure to reserve its purported rights with respect to this issue, and subsequent execution of the Settlement Agreement, precludes it from asserting this claim.  "One who gives a general release has had his opportunity to press his claim; before waiving his rights, he should carefully consider the possibility of a development such as the one that gave birth to this lawsuit.  That risk was implicit in the settlement . . . Once a decision is to settle is made, a party must abide by it."  Ruskay, 552 F.2d at 398;  see also Augustine Med., Inc., 194 F.3d 1367, 1373  ("[I]t was [the plaintiff's] responsibility to make manifest its intent to leave the issue of possible future patent infringement claims open for future resolution.  Because [the plaintiff] knew that factually a claim would exist after the Settlement Agreement, we can grant no exception to this rule").

Furthermore, the fact that sophisticated parties drafted the Settlement Agreement with the advice of counsel allows for no other result than the preclusion of Plaintiffs' claims.  See Ruskay, 552 F.2d at 396 (emphasizing that the settlement was conducted by attorneys, precluding a situation where a court would "strive to extricate an uninformed layman from the consequences of a hasty settlement"); Tallmadge Bros., 252 Conn. 479, 499-500 (enforcing broad release provision in settlement agreement and setting forth that "[w]e decline to abandon the basic principle of contract law that we construe contract language by reference to the words chosen by the parties").  Indeed, as previously set forth, the parties to the Settlement Agreement are sophisticated, acted on the advice of counsel, and went through an extensive process of exchanging drafts

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and redrafts of what ultimately became the Settlement Agreement.  See Farid Affidavit at ¶¶ 15, 18; Settlement Agreement at ¶ 11 ("[T]he terms of the Settlement Agreement and Release are contractual and not a mere recital").

Based on the foregoing, EA respectfully requests that the Court render judgment in its favor as the Settlement Agreement and Release precludes IED's claims.

### B.   IED's Claims Are Barred by the Doctrine of Res Judicata

In the event that the Court determines that the terms of the Settlement Agreement do not preclude IED's causes of action, its claims should be barred by the doctrine of res judicata.  The doctrine of res judicata, or claim preclusion, provides that "when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them,[2] not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."  Waldman v. Village of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997)) (emphasis added).  A settlement agreement is considered a final judgment on the

---

[2] Although Incredible Franchise Corporation was not a party to the Settlement Agreement, it is clearly a party in privity with IED for the purposes of barring its claims against EA. The Court of Appeals for the Second Circuit has found privity between parties when, inter alia, a non-party's interests in the prior litigation are virtually identical.  See Waldman, 39 F. Supp. 2d 370, 380; see also Chase Manhattan Bank v. Celotex Corp., 56 F.3d 343, 346-47 (2d Cir. 1995) (setting forth that privity based on identity of parties must be found in the substantial identity of the incentives of the two parties).

- 14 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

merits for purposes of res judicata. See Waldman, 39 F. Supp. 2d 370, 377 (citing Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 169 (2d Cir. 1992)).

Res judicata prevents IED from litigating any issues that could have been raised or decided in the Prior Action, even if those issues were not actually raised or decided. See Waldman, 39 F. Supp. 2d 370, 377 (granting motion to dismiss because plaintiff's claims were barred by doctrine of res judicata in light of parties' settlement agreement regarding prior lawsuit); Mayer v. Executive Telecard, Ltd., No. 95 Civ. 5403, 1997 WL 16669, at *1-2 (S.D.N.Y. Jan. 17, 1997) (attached hereto as Exhibit 2) (invoking doctrine of res judicata because claims alleged in instant lawsuit arose out of same set of operative facts as prior lawsuit); see also Monahan v. Department of Corrections, 214 F.3d 275 (2d Cir. 2000) (same). "Of primary importance is the identity of facts surrounding the occurrence which constitutes the cause of action, as opposed to the legal theory within which a complaint is framed. . . . In sum, new legal theories do not amount to a new cause of action as to defeat res judicata." Waldman, 39 F. Supp. 2d 370, 377.

The facts of the instant action are substantially similar to the facts of the Prior Action so as to make the doctrine of res judicata applicable to preclude the instant claims. Indeed, the allegations underlying IED's instant Complaint are virtually identical to the allegations constituting the factual predicate for IED's claims in the Prior Action. Compare Complaint at ¶¶ 52-61 with Counterclaim at ¶¶ 29-34. Any contention by IED to the contrary would be disingenuous and without merit. A comparison of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

allegations now asserted with the pleadings in the Prior Action belies any assertion by IED that EA is now engaging in new, post-settlement acts. See Waldman, 39 F. Supp. 3d 370, 379 ("[T]he pleading of subsequent acts will not defeat res judicata when these additional facts arise from the same core of operative facts."); see also Monahan, 214 F.3d 275, 289 (setting forth that plaintiff's assertion of new incidents arising from the same set of operative facts was insufficient to bar the application of res judicata).

All the claims alleged by IED in the instant matter could have been raised in the Prior Action. Yet, they were not. EA registered the domain name "fruitflower.com" in September 1999. See Farid Affidavit at ¶ 16; Kamran Farid Affidavit at ¶ 2; Exhibit D. Further, by the time the Settlement Agreement was executed, EA had already begun using the terms "fruitflower," "incredible," "edible," and "delite" in the metatags on its website. See Farid Affidavit at ¶ 17; Kamran Farid Affidavit at ¶ 6; Exhibit B attached to Kamran Farid Affidavit. Indeed, the parties discussed the use of certain terms and phrases on websites and metatags during the settlement negotiations. See Farid Affidavit at ¶ 18. Accordingly, IED's claims are barred by the doctrine of res judicata and EA is properly entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Edible Arrangements, LLC's and Edible Arrangements Franchise Group, Inc.'s Motion for Summary Judgment should be granted.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

| | |
|---|---|
| Dated: May 13, 2004<br>Hartford, Connecticut | RESPECTFULLY SUBMITTED,<br><br>THE DEFENDANTS,<br>EDIBLE ARRANGEMENTS<br>FRANCHISE GROUP, INC., and<br>EDIBLE ARRANGEMENTS, LLC<br><br><br>By:_____<br>Thomas J. Finn<br>Federal Bar No. ct 20929<br>Paula Cruz Cedillo<br>Fed. Bar No. ct 23485<br>HALLORAN & SAGE LLP<br>One Goodwin Square<br>225 Asylum Street<br>Hartford, Connecticut 06103<br>(860) 522-6103<br><br>and<br><br>Kevin P. Walsh<br>Williams, Walsh & O'Connor<br>110 Washington Avenue, 2nd Floor<br>North Haven, Connecticut 06473<br>(203) 234-6333 |

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CERTIFICATION**

This is to certify that on this 13th day of May 2004, a copy of the foregoing was mailed to:

John F.A. Earley, III, Esq.
Frank J. Bonini, Jr., Esq.
Charles L. Riddle, Esq.
Harding, Earley, Follmer & Frailey
86 The Commons at Valley Forge East
1288 Valley Forge Road
P.O. Box 750
Valley Forge, Pennsylvania 19482-0750

Mark D. Giarratana, Esq.
Eric Grondahl, Esq.
McCarter & English
185 Asylum Street
CityPlace I
36th Floor
Hartford, Connecticut 06103

Thomas C. Clark, Esq.
Litchfield Cavo
40 Tower Lane, Suite 200
Avon, Connecticut 06001

                                                       Thomas J. Finn

548173

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105