**EXHIBIT 1**

Case 3:02-cv-01529-AVC    Document 137-8    Filed 09/29/2005    Page 1 of 12

Service: Get by LEXSEE®
Citation: 1989 U.S. Dist. LEXIS 5262

1989 U.S. Dist. LEXIS 5262, *

IMAF, S.p.A., Plaintiff, v. J. C. PENNEY COMPANY, INC., Defendant

No. 86 CV 9080 (KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1989 U.S. Dist. LEXIS 5262

May 12, 1989, Decided; May 15, 1989, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff clothing manufacturer filed suit against defendant department store for trademark infringement under §§ 32(1) and 43(a) of the Lanham Act (Act), 15 U.S.C.S. §§ 1114(1) and 1125(a); unfair competition; and tortious interference with contractual relations. The department store filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The manufacturer filed a motion to amend its complaint pursuant to Fed. R. Civ. P. 15(a).

**OVERVIEW:** The department store ordered from the manufacturer sweaters bearing the manufacturer's label, which was later registered as a trademark. The manufacturer subcontracted production of the sweaters. After the department store arranged for the subcontractor to ship the sweaters directly to it at a reduced price and placed them in its stores without the manufacturer's authorization, the manufacturer filed suit. The court granted the department store's motion for summary judgment on the manufacturer's trademark infringement claim under 15 U.S.C.S. § 1114(1), finding that the manufacturer's trademark was not registered at the time of the alleged infringement. However, the court denied summary judgment on the manufacturer's trademark infringement claim under 15 U.S.C.S. § 1125(a) and on the manufacturer's unfair competition claims, finding that issues of fact remained as to whether the public recognized the trademark as identifying the manufacturer's goods and as to the likelihood of confusion among the public. The court also granted the manufacturer's motion to amend to reflect the recent registration of its trademark and to plead its interference claim with particularity.

**OUTCOME:** The court granted the department store's motion for summary judgment in part and denied it in part in the manufacturer's action for trademark infringement, unfair competition, and tortious interference with contractual relations. The court also granted the manufacturer's motion to amend its complaint.

**CORE TERMS:** summary judgment, registration, trademark, label, tortious interference, Lanham Act, infringement, secondary meaning, sweaters, cause of action, foreign law, unfair competition, registered, goodwill, trademark infringement, consumer, amend, Plaintiff's Memorandum of Law, matter of law, misappropriation, managers, issue of fact, third party, retroactively, succeed, exclusive agency, motion to amend, subcontracted, merchandise, contractual

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN1* Summary judgment shall be granted when the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment will be rendered only if the court finds that any unresolved issues of fact are not material to the underlying cause of action. The mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN3* The substantive law will identify which facts are material for purposes of summary judgment. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN4* The mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient to defeat summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  More Like This Headnote

Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Infringement Actions > Determinations
Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview

*HN5* To maintain a cause of action under § 43(a) of the Lanham Act, 15 U.S.C.S. § 1125 (a), a plaintiff must establish (1) the validity of its trademark and (2) infringement.  More Like This Headnote

Trademark Law > Subject Matter > Distinctiveness > Inherent Distinctiveness
Trademark Law > Subject Matter > Secondary Meaning > General Overview

*HN6* For a trademark to be valid, it must either be inherently distinctive on its face or it must acquire secondary meaning.  More Like This Headnote

Trademark Law > Conveyances > General Overview
Trademark Law > Subject Matter > Secondary Meaning > General Overview

*HN7* In determining whether secondary meaning has been acquired, courts consider the length and exclusivity of use, sales levels, and the extent of advertising and promotion.  More Like This Headnote

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

*HN8* To establish infringement, a plaintiff must show that the use of a trademark by another is likely to cause confusion among the public. Confusion refers to the possibility that the public will be misled into thinking that a defendant is selling

products manufactured by or approved by the holder of the mark, namely, the plaintiff. In deciding whether a likelihood of confusion exists, courts examine the strength of the plaintiff's trademark, the similarity between the plaintiff's and the defendant's marks, the proximity of the products, the likelihood that the plaintiff will "bridge the gap" (enter the area of competition in which the defendant is operating), the defendant's good faith in using the mark, evidence of actual confusion, sophistication of the buyers, and quality of the defendant's products. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
**HN9** Both "palming off" and misappropriation claims require as the cornerstone of liability a showing that a defendant's conduct will result in consumers confusing the source of the defendant's products. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
**HN10** "Palming off" is an attempt by one person to induce consumers to believe that his product is actually that of another. Central to this cause of action is fraud by the defendant in foisting his product on the market so that there is resulting confusion or likelihood of confusion as to its source. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
**HN11** In order to establish a claim for misappropriation of property rights under New York law, a plaintiff must prove the misappropriation of the skill, expenditures, and labor of another. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
**HN12** To succeed at trial on a claim of misappropriation of goodwill, a plaintiff must show that: (1) the protected name has acquired recognition among prospective consumers; and (2) there is an intentional attempt by a defendant to exploit this goodwill. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract
**HN13** Under New York law, a valid cause of action for tortious interference with contractual relations consists of four elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach of the contract by the third party; and (4) damages caused by the breach. More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury
**HN14** A court's determination of foreign law shall be treated as a ruling on a question of law. Fed. R. Civ. P. 44.1. More Like This Headnote | *Shepardize:* Restrict By Headnote


**OPINIONBY:** [*1]

WOOD

**OPINION:** MEMORANDUM OPINION

KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE

This action is before the Court on defendant's motion for summary judgment on plaintiff's claims for trademark infringement, unfair competition, and tortious interference with contractual relations. Plaintiff, in a separate motion, asks the Court for leave to amend its

Complaint. For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part; plaintiff's motion to amend its Complaint is granted.

Background

Plaintiff, IMAF, S.p.A ("IMAF") is an Italian corporation in the business of manufacturing and exporting Italian made clothing. Defendant, J.C. Penney Company, Inc. ("Penney") is a Delaware coloration which operates a large chain of department stores throughout the United States. Defendant's Proposed Pretrial Order at 1.

On February 22, 1985, defendant ordered from IMAF, through its purchasing agent in Italy, Gallinaro Buying Service ("GBS"), 40,000 lambswool sweaters bearing the label ADIANSI. (The label ADIANSI is derived from the surname of Elio Adiansi, the Chairman of the Board of IMAF.) Affidavit of Elio Adiansi ("Adiansi Aff.") at para. 17. Defendant [*2] had purchased ADIANSI sweaters from IMAF the previous year. Adiansi Aff. at para. 2.

The mark ADIANSI was registered in Italy as IMAF's trademark on October 4, 1985. Id. at para. 7. IMAF filed an application to register the ADIANSI mark with the United States Patent and Trademark Office ("PTO") on November 18, 1985. Adiansi Aff. at para. 8. This mark was registered by the PTO on October 4, 1988. Affidavit of Herbert Rubin ("Rubin Aff.") at para. 3.

IMAF partially subcontracted the production of the 1984 orders to Primavera S.p.A ("Primavera"), a company with whom IMAF had conducted business since 1975. Adiansi Aff. at para. 4. Pursuant to this relationship, on February 2, 1984, IMAF and Primavera entered into an exclusive agency agreement: IMAF agreed to market Primavera's goods both in Italy and abroad, and in return Primavera would pay IMAF a 12 percent commission on all sales. Id. at para. 9. Penney's 1985 order for ADIANSI sweaters was again subcontracted to Primavera. Id. at para. 17.

IMAF contends that Penney's purchasing agent, GBS, entered into negotiations with Primavera in an attempt to divert all of Primavera's present and future business directly to Penney. [*3] Plaintiff further claims that Penney, with full knowledge of IMAF's existing contracts with Primavera, induced Primavera to terminate its relationship with IMAF by offering a more attractive exclusive agency deal that would require Primavera to pay only 5 percent in commission costs. Id. at paras. 13, 14.

IF further claims that Penney's agents in Italy conspired with Primavera in refusing to certify the quality of the February 1985 order, thus providing a pretext for cancelling IMAF's order. Id. at paras. 25-34. According to plaintiff, GBS and Primavera then arranged for the shipment of the sweaters bearing the ADIANSI label directly to Penney at a reduced price. Penney, in turn, placed the sweaters in its stores with knowledge that these shipments as well as the use of the ADIANSI label not been authorized by IMAF. Id. at paras. 39, 41.

Discussion

Standard for Summary Judgment

The Federal Rules of Civil Procedure provide that [HN1] summary judgment shall be granted when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment [*4] will be rendered only if the court finds that any unresolved issues of fact are not material to the underlying cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (1986), cert. denied, 480 U.S. 932 (1987). "The mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary

judgment." Quarles v. General Motors Corp., 758 F.2d 839, 849 (2d Cir. 1985) (per curiam).

The Supreme Court has provided guidance in applying the standard for granting a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson, 477 U.S. at 242; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). In Celotex the Court held that:

> the plain language of [HN2] Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . The moving party [*5] is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. at 322-323.

In Anderson, the Court noted that [HN3] "the substantive law will identify which facts are material" for purposes of summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. As for what constitutes a "genuine" issue of fact, the Anderson Court explained

> [I]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. [HN4] The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252. n1

---

n1 In light of this clear, recent Second Circuit and Supreme Court precedent, the Court finds inexplicable plaintiff's citation of two Second Circuit cases from the 1940's in support of the proposition that this Court should apply the "slightest doubt" standard in determining whether a factual issue exists for on a motion for summary judgment. Plaintiff's Memorandum of Law at 13 (citing Doehler Metal Furniture Co. v. United States, 149 F.2d 130 (2d Cir. 1945); Weisser v. Mursam Shoe Corporation, 127 F.2d 344 (2d Cir. 1942)). [*6]

With the foregoing standard for summary judgment in mind, the Court now turn to the merits of the plaintiff's claim.

I. Trademark Infringement

Defendant moves for summary judgment on plaintiff's claim for trademark infringement under sections 32(1) [15 U.S.C. § 1114(1) (1982)] and 43(a) [15 U.S.C. § 1125(a) (1982)] of the Lanham Act.

a. Section 32(1)

Section 32(1) provides a cause of action for the owner of a trademark registered with the PTO against any person who, without the consent of the owner, improperly uses said mark. The protection accorded the owners of a trademark by Section 32(1) of the Lanham Act

applies only to owners of registered trademarks. See U.S.C. § 1141(1).

While plaintiff's trademark has recently been registered with the PTO, it was not registered at the time of the alleged infringement. Plaintiff attempts to avoid this dilemma by asserting that registration should be applied retroactively from the date of filing. Plaintiff states: "[t]he registration of the tradename 'ADIANSI' is prima facie proof that the plaintiff was the owner of the mark on the date the application was filed (November 18, 1985). . . . Gillette Co. v. Kempel, 254 [*7] F.2d 402 (C.C.P.A. 1958)." Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 14. Gillette does not hold, however, that once registration of a trademark is granted it applies retroactively from the date of filing. Moreover, the plaintiff has presented no cases and the Court has uncovered no authority that supports this theory of retroactive registration.

In Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co., 592 F.Supp. 127 (E.D. Pa. 1984), the court rejected plaintiff's theory of retroactive registration. There, the plaintiff applied for registration of its mark in 1972, the registration was issued by the PTO in 1976, and the alleged infringement took place in 1975. The district court held that because plaintiff was not the owner of a registered trademark at the time of the alleged infringement, it was not entitled to recover under Section 32(1) of the Lanham Act. Id. at 136.

In this case, the fact that the PTO issued plaintiff's patent on October 4, 1988 is uncontroverted. Because the alleged infringement took place prior to this date, the Court holds that the plaintiff may not maintain an action for trademark [*8] infringement based on Section 32(1) of the Lanham Act. The defendant's motion for summary judgment, therefore, is granted as to this cause of action.

b. Section 43(a)

Plaintiff also asserts a claim for trademark infringement based on Section 43(a) of the Lanham Act. Section 43(a) affords protection to unregistered trademarks. Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 78 (2d Cir. 1981). HN5 To maintain a cause of action under section 43(a) of the Lanham Act, plaintiff must establish (1) the validity of its trademark and (2) infringement. Silverman v. CBS Inc., 632 F.Supp. 1344, 1356 (S.D.N.Y. 1986).

HN6 For a trademark to be valid, it must either be inherently distinctive on its face or it must acquire secondary meaning. McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1131 (2d Cir. 1979). Plaintiff asserts that the recent registration of its trademark precludes it from being required to prove secondary meaning because the Second Circuit has held that a registered trademark is presumptively distinctive. See McGregor-Doniger, Inc., 599 F.2d at 1132. Plaintiff has cited no authority for the Court to conclude that the presumption of distinctiveness applies retroactively [*9] when the registration itself does not. See Reliable Tire Distributors, Inc., 592 F.Supp. at 136 (E.D. Pa. 1984) (registration does not apply retroactively). Plaintiff must therefore establish either secondary meaning or inherent distinctiveness at the time of the alleged infringement in order to receive protection under the trademark laws.

In determining whether secondary meaning has been acquired, the recognition by the public of the source of the product is of paramount significance. American Footwear Corp. v. General Footwear Co., 609 F.2d 655, 663 (2d Cir. 1979) ("[t]he crucial question in a case involving 'secondary meaning' always is whether the public is moved in any degree to buy an article because of its source.") While proof of secondary meaning must be examined on a case by case basis, HN7 courts generally consider, inter alia, "the length and exclusivity of use, sales levels, and [the] extent of advertising and promotion." Id.

In this case, defendant does not dispute that the trademark ADIANSI had been used by IMAF

in international commerce since at least September of 1982. In fact, defendant bought IMAF goods bearing the ADIANSI label prior to the order in **[*10]** question here. Furthermore, Penney specifically requested that the ADIANSI label appear on the merchandise when it placed the disputed order. Defendant's Proposed Pretrial Order at para. 10(c). Additionally, Penney's Vice-President testified at his deposition that Penney displayed trademarks because they affect the decision of the consumer whether or not to purchase an item. Plaintiff's Memorandum of Law at 4.

Plaintiff further attests that on October 30, 1985, two managers of the Benetton Corporation bought one of the sweaters sold directly to Penney by Primavera and showed it to Mr. Adiansi, asking why IMAF would sell merchandise of such poor quality. Defendant's Memorandum of Law at 12. The fact that the Benetton managers connected the ADIANSI label with the source of the product is strong evidence of secondary meaning.

Considering all the above evidence and drawing all inferences in favor of the nonmoving party, the Court holds that a reasonable jury could find that at the time of the infringement the public recognized the ADIANSI mark as identifying the plaintiff's goods.

In order to succeed on its section 43(a) Lanham Act claim, plaintiff must also establish infringement. *HN8* To **[*11]** do so, plaintiff must show that the use of the mark by another is likely to cause confusion among the public. Silverman, 632 F.Supp. at 1356. Confusion refers to the possibility that the public will be misled into thinking that defendant is selling products manufactured by or approved by the holder of the mark, namely, the plaintiff. Warner Bros. Inc., 658 F.2d at 78. In deciding whether a likelihood of confusion exists, courts examine, inter alia, the strength of the plaintiff's trademark, the similarity between plaintiff's and defendant's marks, the proximity of the products, the likelihood that the plaintiff will "bridge the gap" (enter the area of competition in which the defendant is operating), defendant's good faith in using the mark, evidence of actual confusion, sophistication of the buyers, and quality of defendant's products. Polaroid Corp. v. Polard Electronics Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820 (1961).

As evidence of the likelihood of confusion, plaintiff points to the actual confusion of Armando Maffeis and Angelo Savardi, the managers from Benetton. Moreover, plaintiff's and defendant's products are similar (they are the **[*12]** same product), they are sold in the same market at the same time, and plaintiff is competing in the same line of products as the defendant. Thus, defendant has not established as a matter of law that plaintiff cannot succeed on its section 43(a) Lanham Act claim. Therefore, defendant's motion for summary judgment on this claim is denied.

II. Unfair Competition

Defendant also moves for summary judgment on plaintiff's unfair competition claims. Plaintiff asserts two claims of unfair competition: (1) "palming off" and (2) misappropriation. *HN9* Both of these claims require as the cornerstone of liability "a showing that the defendant's conduct will result in consumers confusing the source of defendant's products." McDonald's Corp. v. McBagel's Inc., 649 F.Supp. 1268, 1280 (S.D.N.Y. 1986).

Plaintiff's first claim of unfair competition, *HN10* "palming off," has been described by this court as "an attempt by one person to induce consumers to believe that his product is actually that of another. . . ." Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F.Supp. 129, 135 (S.D.N.Y. 1972). Central to this cause of action is fraud by the defendant in "foisting his product on the market [so] **[*13]** that there is resulting confusion or likelihood of confusion as to its source. . . ." Hygienic Specialties Co. v. H.G. Salzman Inc., 302 F.2d 614, 621 (2d Cir. 1962).

As previously stated, plaintiff has asserted facts sufficient to preclude a finding, as a matter of law, that a likelihood of confusion does not exist. Plaintiff also attests that defendant accepted the goods bearing the ADIANSI label and placed them in the stream of commerce knowing that plaintiff had not consented to the use of its mark. Thus, an issue of fact exists as to the likelihood of confusion and as to the fraudulent nature of defendant's conduct. Defendant's motion for summary judgment as to this cause of action is, therefore, denied.

Plaintiff's second claim of unfair competition is based on the theory of misappropriation of property rights. HN11 In order to establish this claim under New York law, plaintiff must prove the "misappropriation of the skill, expenditures and labor of another." American Footwear Corp., 609 F.2d at 662; see also Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980). Such skill, expenditures, and labor may consist of tangible products, International [*14] News Service v. Associated Press, 248 U.S. 215 (1918) (news bulletins), or intangible property such as goodwill developed in a particular trade name or mark. American Footwear Corp., 609 F.2d at 662.

Plaintiff's claim appears to be that Penney misappropriated the goodwill which had attached to the name ADIANSI. HN12 To succeed at trial on this claim, plaintiff must show: (1) the protected name had acquired recognition among prospective consumers; and (2) that there was an intentional attempt by defendant to exploit this goodwill. Flexitized Inc. v. National Flexitized Corp., 335 F.2d 774, 782 (2d Cir. 1964), cert. denied, 380 U.S. 913 (1965).

Plaintiff has come forward with sufficient evidence to support a finding that the label ADIANSI had acquired a substantial amount of goodwill. Plaintiff was the sole user of the mark for at least three years prior to the alleged misappropriation, two managers of Benetton (a major clothing retail store) recognized the source of the product, and Penney sought to have the ADIANSI label appear on its garments in order to sway consumers in their decision to purchase the goods. Plaintiff also claims that defendant intentionally exploited this [*15] goodwill by marketing defendant's merchandise with the ADIANSI tag, without plaintiff's approval, in an attempt to capitalize on plaintiff's reputation.

The Court finds that issues of fact exist as to the essential elements of this cause of action; thus, defendant's motion for summary judgment on this claim is denied.

III. Tortious Interference with Contractual Relations

Defendant next moves for summary judgment on plaintiff's claim of tortious interference. Plaintiff alleges that Penney tortiously interfered with two contracts that IMAF had with Primavera: one, a subcontract for the manufacture of the sweaters Penney ordered, and the other, an exclusive marketing agreement.

HN13 Under New York law, a valid cause of action for tortious interference with contractual relations consists of four elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of a breach of the contract by the third party; and (5) damages caused by the breach. Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 560-61 (S.D.N.Y. 1985); Israel v. Wood Dolson Co., 151 N.Y.S.2d 1, 5 (1956). [*16] n2

n2 Plaintiff relies on Maison Lazard et Compagnie v Manfra Tordella & Brooks Inc., 585 F.Supp. 1286, 1332 (S.D.N.Y. 1984) for the proposition that in New York, tortious interference with a person in the performance of his contract with a third party "'extends to cases in which performance of the contract is rendered more difficult or a party's enjoyment of the contract's benefit is lessened by the wrongdoer's action.' Goodall v. Columbia Ventures

Inc., (S.D.N.Y. 1974), 374 F.Supp. 1324, 1332 [Judge MacMahon]." As indicated in Nordic Bank PLC, 619 F.Supp. at 561, a case also cited by plaintiff, "the wealth of recent authority [is] to the contrary," and the late Judge MacMahon himself did not adhere to his Goodall formulation of tortious interference in a later case. See Strobl v. New York Mercantile Exchange, 561 F.Supp. 379, 386 (S.D.N.Y. 1983).

Defendant claims that no issue of fact is present as to a possible breach of the contracts by Primavera because plaintiff provides no evidence that the contracts were even enforceable under Italian law. Defendant's Memorandum of Law at 12. Plaintiff does not dispute that Italian law governs these contracts. Plaintiff's [*17] Memorandum of Law at 24. The validity of these contracts under Italian law is thus a question of law for the Court to decide. See Fed. R. Civ. P. 44.1 ("Determination of Foreign Law. . . . HN14[t]he court's determination shall be treated as a ruling on a question of law.") n3

n3 Remarkably, plaintiff asserts in its brief that "[a]s consistently stated by the Courts, in matters in which foreign law is involved . . ., foreign law if it is asserted, should be proved as a fact at trial." Plaintiff's Memorandum of Law at 25 (citing Amdur v. Zim Israel Navigation Company, 310 F.Supp. 1033, 1039 (S.D.N.Y. 1969). The Second Circuit wrote in 1981: "Rule 44.1 of the Federal Rule of Civil Procedure, which became effective in 1966, put to rest the idea that foreign law is a question of fact which has to be proven at trial by the claimant in order to recover." Vishipco Line v. Chase Manhattan Bank. M.A., 660 F.2d 854, 859-860 (2d Cir. 1981). See also Wright & Miller, Federal Practice and Procedure: Civil § 2441 at 399 (1971) ("Although the court in Amdur v. Zim Israel Nav. Co. [citation omitted] said that 'the law of a foreign country is a fact which must be proven,' its attention had apparently not been called to Rule 44.1"). [*18]

The only evidence cited by plaintiff supporting the existence of these contracts is Mr. Adiansi's attestation that IMAF entered into an exclusive agency agreement with Primavera, Adiansi Aff. at para. 9, and his attestation that Penney's 1985 order was subcontracted to Primavera. Id. at para. 17. Neither plaintiff nor defendant has offered evidence or legal argument as to the enforceability of the contracts under Italian law. See Defendant's Reply Memorandum at 9 ("[t]he fact is that the record contains very little information concerning the contours of the arrangements between Primavera and IMAF and nothing at all concerning how those arrangements would be viewed under Italian law."). As stated by Wright & Miller, supra, at 416,

[r]ule 44.1 is silent on the effect of a failure to prove foreign law. This may be because there was doubt whether this would be within the rulemaking power or because it was thought that a failure of proof will rarely occur with the new methods made available by the rule for the determination of foreign law. The rare case in which there is a failure of proof of this kind would be an especially unappealing case for holding that the party whose [*19] claim or defense is based on foreign law must lose. . . .

The Court is unprepared to rule in favor of defendant because both parties' failed to brief this issue. Contrary to plaintiff's assertion, however, this is not an issue for trial. Therefore, within 20 days of the issuance of this Opinion, IMAF shall file with the Court a legal memorandum and accompanying documentation supporting its proposition that valid contracts existed under Italian law between IMAF and Primavera and that Primavera breached these contracts. Defendant shall reply within 15 days.

The Court thus reserves judgment on defendant's motion for summary judgment on plaintiff's tortious interference claims pending these further submissions.

IV. Plaintiff's Motion to Amend its Complaint

Plaintiff moves this Court to amend its Complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to reflect the recent registration of its trademark "ADIANSI" by the PTO. In addition, plaintiff seeks to amend its Complaint to identify specifically the contracts referred to in plaintiff's claim for tortious interference with contractual relations.

Courts have generally construed Rule 15(a) liberally and freely granted [*20] leave to amend in the absence of prejudice, undue delay, or bad faith. Foman v. Davis, 371 U.S. 178, 182 (1962).

Defendant was made aware of plaintiff's application for registration from the inception of this action. Defendant, in fact, interposed an opposition to such registration with the PTO. Defendant is thereby precluded from claiming undue surprise and unfair prejudice when it was aware at all times throughout the pending litigation that the registration could be granted at any time. Plaintiff has also acted promptly from the date of registration to amend, and there has been no showing of bad faith on the part of the plaintiff.

As to plaintiff's request to be allowed to amend its Complaint in order to plead with particularity, the Court finds that the defendant will not be unduly burdened by such an amendment. Plaintiff's Amended Complaint refers essentially to the same set of operative facts as the original Complaint. These initial allegations were sufficient to put defendant on notice of plaintiff's tortious interference claim. See Hanlin v. Mitchelson, 794 F.2d 834, 840 (2d Cir. 1986).

Because the Court finds that the defendant will not be unduly prejudiced by these [*21] amendments, and because there is an absence of undue delay or bad faith, plaintiff's motion to amend the complaint is granted.

CONCLUSION

For the above stated reasons, the defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's motion to amend its Complaint is granted.

SO ORDERED.

DATED: New York, New York

May 12, 1989

Service: **Get by LEXSEE®**
Citation: **1989 U.S. Dist. LEXIS 5262**
View: Full
Date/Time: Wednesday, September 28, 2005 - 3:58 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.