## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement is entered into this 1st day of December, 2005, between Incredibly Edible Delites, Inc., Incredible Franchise Corporation (collectively referred to as "IED") and Edible Arrangements, LLC, Edible Arrangements Franchise Group (collectively referred to as "EA") (IED and EA are collectively defined as the "Parties").

### RECITALS

WHEREAS, on or about June 21, 2002, IED commenced a lawsuit, in the United States District Court for the Eastern District of Pennsylvania, entitled Incredibly Edible Delites, Inc. et al. v. Edible Arrangements LLC et al., Civil Action No. 02-4021. The action was transferred to the United States District Court, District of Connecticut, bearing Civil Action No. 3:02 CV 1529 (AVC) (the "Action").

WHEREAS, IED asserted claims under the Lanham Act and under state law of trademark infringement, false designation of origin, dilution, violation of the Anticybersquatting Act, and unfair competition.

WHEREAS, by Answer and Counterclaim dated December 6, 2002, EA asserted causes of action against IED for breach of a previous Settlement Agreement and Release, dated June 13, 2001, breach of covenant of good faith and fair dealing, trademark infringement under the Lanham Act, abuse of process, and violation of the Connecticut Unfair Trade Practices Act.

WHEREAS, the Parties desire to resolve all related disputes between them and wish to settle the Action so as to avoid any further expense or inconvenience of litigation and enter into this Settlement Agreement and Release ("Agreement") for that purpose.

1

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which the Parties hereby acknowledge, IED and EA hereby agree as follows:

1. EA agrees that EA, their respective officers, directors, partners, agents, servants, employees, representatives, franchisees, successors, assigns, and other persons, firms, and corporations (including subsidiaries and related companies ) within its control:

   a) Within 30 days of the execution of this Agreement, will not register as a domain name, maintain a domain name registration for, or use on or in connection with any goods/services, or in the sale, offering for sale, promoting, advertising, marketing and distributing of any goods/services, any of the specific terms: "FRUIT FLOWERS," "FRUITFLOWERS.COM," "FRUITFLOWERS," "WWW.FRUITFLOWERS.COM" (alone or including the design used by IED as of the date of this Agreement for such mark, as set forth in Exhibit A hereto), "INCREDIBLY EDIBLE DELITES," "INCREDIBLY EDIBLE DELITES, INC.," "IED", "INCREDIBLY EDIBLE DELITES, INC EDIBLE FLORAL CREATIONS" (including the design used by IED as of the date of this Agreement for such mark, as set forth in Exhibit B hereto), "Incredibly Edible Delight," "Incredibly Edible Delights," "Fruit Flower," "Fruitflower," "Fruit-Flower," "Fruit-Flowers," "fruitflower.com," "www.fruitflower.com," "fruit_flower," and "fruit_flowers" (collectively, the "IED Terms"), regardless of the case of the letters and regardless of the punctuation, or any term or word (including intentional or deceptive misspellings) which is or are confusingly similar to any of the IED Terms.

   b) As of the execution of this Agreement, will not actively assist or encourage another entity to use on or in connection with any goods/services, or in the sale, offering for sale,

2

promoting, advertising, marketing and distributing of any goods/services, any of the IED Terms or any term which is confusingly similar to any of the IED Terms;

    c)    Within 30 days of the execution of this Agreement, will not use the IED Terms, or any confusingly similar term (including intentional or deceptive misspellings), as a metatag, metadata, hyperlink, HTML code, portal keyword, search engine keyword, domain name, or other item associated with any of EA's web sites directly or indirectly controlled or affiliated with EA, including on the web sites www.ediblearrangements.com and www.deliciousdesign.com, provided such use or inclusion is within its control;

    d)    Within 10 days of the execution of this Agreement, will cause the transfer to Incredible Edible Delites, Inc., of the Internet domain name fruitflower.com;

    e)    After 60 days from the execution of this Agreement, will permanently not use the IED Terms on or in connection with EA's goods or services (specifically including but not limited to use in advertising, promotion, marketing, metatags, metadata, web sites, HTML code, hyperlinks, search engine keywords, or any type of searchable portal keyword or internet directory, provided such use or inclusion is within its control) in any advertisements or promotion (including through any activities of any internet directory or keyword services which are within its control); and

    f)    In order to effectuate the provisions of Paragraph 1d), the Parties agree to the entry of a consent order by this Court by which the domain name www.fruitflower.com shall be transferred from any and all persons presently owning the rights to such domain name to Incredibly Edible Delites, Inc. Such agreement shall fulfill all of the defendants' obligations with respect to the transfer of such domain name. The entry of such consent order shall

constitute a material term of this Settlement, and in the event that this Court does not sign the Consent Order, this agreement shall be deemed void.

    2.    IED agrees that IED, their respective officers, directors, partners, agents, servants, employees, representatives, franchisees, successors, assigns, and other persons, firms, and corporations (including subsidiaries and related companies ) within its control:

    a)    Within 30 days of the execution of this Agreement, will not register as a domain name, maintain a domain name registration for, or use on or in connection with any goods/services, or in the sale, offering for sale, promoting, advertising, marketing and distributing of any goods/services, any of the specific terms: "Edible Arrangements", "Edible Arrangement," "ediblearrangement", "ediblearrangements", "edible_arrangement," "edible_arrangements," "www.ediblearrangements.com," "Edible-Arrangement", or "Edible-Arrangements," "EA," "Edible Arrangements – Delicious Floral Designs" including the design used by EA as of the date of this Agreement for such mark (as set forth in Exhibit C hereto) (collectively, the "EA Terms") and regardless of the case of the letters and regardless of punctuation, or any term or word (including intentional or deceptive misspellings), which is or are confusingly similar to any of the EA Terms;

    b)    As of the execution of this Agreement, will not actively assist or encourage another entity to use on or in connection with any goods/services, or in the sale, offering for sale, promoting, advertising, marketing and distributing of any goods/services, any of the EA Terms or any term which is confusingly similar to any of the EA Terms;

    c)    Within 30 days of the execution of this Agreement, will not use the EA Terms , or any confusingly similar term (including intentional or deceptive misspellings) as a metatag, metadata, hyperlink, HTML code, portal keyword, search engine keyword, domain name, or

other item associated with any of IED's web sites directly or indirectly controlled or affiliated with IED, including but not limited to on the web sites www.fruitflowers.com and www.incrediblyedibledelites.com, provided such use or inclusion is within its control;

  d)  Within 60 days of the execution of this Agreement, will permanently not use the EA Terms on or in connection with IED's goods or services (specifically including but not limited to use in advertising, promotion, marketing, metatags, metadata, web sites, HTML code, hyperlinks, search engine keyword, or any type of searchable portal keyword or internet directory, provided such use or inclusion is within its control) in any advertisements or promotion (including through any activities of any internet directory or keyword services which are within its control).

  3.  The restrictions and limitations provided for in Paragraphs 1 and 2, above, shall not prohibit or preclude either Party from linking to any third-party article, publication, or news story even if such article, publication, or news story includes, within it, any Terms prohibited against such Party, provided that such Party has not solicited or encouraged the author or publisher of such article, publication, or news story to include such prohibited Term. If any such link is inactive and the article, publication, or news story no longer exists on the third-party web site which originally contained the article, publication, or news story, any Party may include one copy of any such third-party article, publication or news story without redaction of prohibited Terms on any of its websites after such link becomes inactive. In addition, any Party may, at any time, post such third-party articles, publications, or news stories which, in their original form, contain such Terms for an unlimited period of time, provided either (a) that the prohibited Terms are redacted from the version posted on the Party's web site, or (b) that the article, publication, or news story is posted in PDF or equivalent format (in which case no redactions will be required).

In the event that any particular article, publication or news story containing prohibited terms is or becomes subject to being indexed by prevailing Internet search engines, a Party posting articles, publications or news stories which contain otherwise prohibited terms may continue to post only a reasonable number of such articles, publications or news stories containing such prohibited terms. Other than the above, nothing in this Paragraph or in this Agreement shall require any Party to take any actions with respect to any independent search engines or Internet directories, provided that such Party complies with its obligations as of the dates provided for in the aforementioned paragraphs.

   4. Notwithstanding any of the time periods set forth in Paragraphs 1 and 2, the party subject to the limitations in such paragraphs shall not, as of the execution of this Agreement, take any new actions which would constitute a violation of the provisions of such paragraphs, and it is expressly understood that the purpose of the periods set forth in those paragraphs is to allow the parties to comply in a commercially reasonable manner.

   5. Both parties shall reserve, onto themselves and their officers, agents, servants, related corporations, and franchisees, the right to use each of the following terms, regardless of case, punctuation, spelling (including misspellings), and pluralization, so long as they are not used in any of the contiguous combinations as specifically and respectively prohibited in paragraphs 1 and 2 above: "incredible," "incredibly," "edible", "fruit", "flower", "floral," "creation," "arrangement," "delite," and "delight."

   6. Each party shall, within 90 days of the execution of this Agreement, provide to the other party written confirmation that it has complied with its obligations as set forth in Paragraphs 1 through 4, above.

7. EA does not and will not in the future contest IED's use, application, and/or registration of the terms "Fruitflowers", "Fruit Flowers", "Fruit Flower", "Fruitflower", "Fruit-Flowers" and/or "Fruit-Flower", or any IED Term, as defined in Paragraph 1(a) above.

8. IED does not and will not in the future contest EA's use, application, and/or registration of the terms "Edible Arrangement" and/or "Edible Arrangements," or any EA Terms, as defined in Paragraph 2(a) above.

9. In addition to causing the transfer of the domain name fruitflower.com, as provided for in paragraph 1(d) above, EA shall, within 10 days of the execution of this Agreement, no longer use any domain name containing "fruitflower" or "fruitflowers," regardless of its Top-Level Domain.

10. IED shall, as of the execution of this Agreement, not use the domain name "ediblearrangements.com," or any domain name containing "ediblearrangements" regardless of its Top-Level Domain.

11. Neither Party shall be responsible for any actions of, conduct of, or content created by third parties unless such allegedly violative material or conduct was actively encouraged or initiated by the allegedly breaching Party subsequent to the execution of this Agreement.

12. Within 30 days of the execution of this Agreement, $150,000 shall be paid to IED on the behalf of EA. EA's insurance companies shall be primarily responsible for such payment, but in the event that such payment is not made within the aforementioned 30-day period, EA shall pay such sum.

13. Within 30 days of the execution of this Agreement, $25,000 shall be paid to EA on the behalf of IED. IED's insurance companies shall be primarily responsible for such

7

payment, but in the event that such payment is not made within the aforementioned 30-day period, IED shall pay such sum.

14. This Agreement shall be signed on the same day by all Parties, and may be executed in separate counterparts.

15. No license is hereby granted whatsoever for any known or unknown use of any trademark, copyright, patent, trade secret, or other proprietary information of IED.

16. No license is hereby granted whatsoever for any known or unknown use of any trademark, copyright, patent, trade secret, or other proprietary information of EA.

17. Except for the obligations set forth herein and as provided for in the Settlement Agreement and Release, dated June 13, 2001, the Parties herein agree that the terms of this Agreement represent a full and final settlement of all claims and counterclaims, direct or indirect, which are or were the subject matter of this Action, as more specifically provided below:

    a. As a material inducement to enter into this Agreement, IED releases, acquits, and forever discharges EA, their affiliates, subsidiaries, predecessors, successors, assigns, agents, licensees, franchisees, representatives, insurers including Northern Insurance Company of New York, Zurich North America and Fulcrum Insurance Company, attorneys, directors, officers, partners, and/or employees, and all persons acting by, through or in concert, or any of them, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, judgments, executions, costs, losses, debts, and expenses, including attorneys' fees and costs, of any nature whatsoever, arising from federal or state law, from statutory or common law, arising from contract or tort, at law or in equity, that occurred from the beginning of time

until the time of execution of this Agreement, and which are within the subject matter of this Action, including specifically but not limited to actions, claims and/or matters of any kind whatsoever that have been asserted in the Action. This release does not release conduct which occurs after the date of this release regardless of whether the conduct began prior to or at the date on which this Agreement is executed, and regardless of whether the nature of the action for which the claim arises is the same as any brought in the current Action, including, without limitation, claims under the Lanham Act, and state trademark and/or unfair competition law, but to the extent such conduct is excepted by this sentence, it does release any claims (including for damages) for conduct occurring prior to but not after the execution of this Agreement.

b.   As a material inducement to enter into this Agreement, EA releases, acquits, and forever discharges IED, their affiliates, subsidiaries, predecessors, successors, assigns, agents, licensees, franchisees, representatives, insurers including Northern Insurance Company of New York, attorneys, directors, officers, partners, and/or employees, and all persons acting by, through or in concert, or any of them, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, judgments, executions, costs, losses, debts, and expenses, including attorneys' fees and costs, of any nature whatsoever, arising from federal or state law, from statutory or common law, arising from contract or tort, at law or in equity, that occurred from the beginning of time until the time of execution of this Agreement, and which are within the subject matter of this Action, including specifically but not limited to

actions, claims, counterclaims, and/or matters of any kind whatsoever that have been asserted in the Action. This release does not release conduct which occurs after the date of this release regardless of whether the conduct began prior to or at the date on which this Agreement is executed, and regardless of whether the nature of the action for which the claim arises is the same as any brought in the current Action, including, without limitation, claims under the Lanham Act, and state trademark and/or unfair competition law, but to the extent such conduct is excepted by this sentence, it does release any claims (including for damages) for conduct occurring prior to but not after the execution of this Agreement.

18. The Parties agree that this Agreement constitutes a settlement of disputed claims. Thus, by entering into this Agreement, the Parties agree and acknowledge that the Agreement shall not in any way be construed as an admission by either IED or EA of any improper or unlawful action or conduct. Specifically, the Parties have entered into this Agreement to avoid the expense, inconvenience, and risk of continuing litigation, as well as to amicably resolve the Parties' disputes.

19. The Parties agree to file within fifteen (15) business days from the signing of this agreement a Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii), dismissing, with prejudice, and without costs or attorneys fees, their respective claims and counterclaims pending in the Action. The Parties agree to assist one another with the execution of any documents which may be necessary to effectuate such dismissal. The Parties further agree to dismiss, with prejudice, and without costs or attorneys fees, the opposition proceedings Nos. 91155256 and 91155408 pending before the United States Patent and Trademark Office Trademark Trial and Appeal Board.

20.	The signatories to this Agreement represent and warrant that they have the power and authority to sign and enter into this Agreement and to bind themselves and their principals, agents, servants, employees, representatives, licensees, assignees, or any person or entity claiming a right or interest derived from those rights claimed by the Parties in this Agreement. They further agree that they have had an opportunity, prior to execution, to review this Agreement with counsel of their choosing, to inquire as they deem necessary regarding the terms of this Agreement, and that they have received adequate and sufficient advice regarding this Agreement.

20.5	The Parties agree that if any party believes that another party has breached any of his or its obligations under this Agreement, the aggrieved party shall notify the party allegedly in breach in writing as to the specific nature of the alleged breach (the "Notice"). The party allegedly in breach then shall have five (5) business days from receipt of the Notice to cure or remedy the alleged breach and to notify the aggrieved party of such cure or remedy. If, after five days, in it sole discretion, the aggrieved party does not believe that the cure or remedy was reasonable and sufficient, it may, at its option, either make application on ten days written notice in the United States District Court for the District of Connecticut with respect to such breach, or else commence litigation with respect to the alleged breach of this Agreement. In either event, the United States District Court for the District of Connecticut shall retain jurisdiction over this Agreement and over the Parties with respect to this Agreement, and shall be the sole and exclusive jurisdiction to hear such disputes.

21.	This Agreement may not be modified except in a writing executed by all of the Parties, or by Court order.

22. The Parties understand and agree that this Agreement shall constitute the entire agreement between the Parties and supercedes any and all prior agreements or understandings between the Parties, except for the previous Settlement Agreement and Release, dated June 13, 2001 (the "2001 Settlement Agreement"), executed in connection with the civil action entitled <u>Edible Arrangements LLC v. Incredibly Edible Delites, Inc. et al.</u> Civil Action No. 3:99 CV 1500 (SRU) remains in full force and effect and all provisions thereof, including but not limited to all rights, duties, and obligations thereunder, shall not be affected by this Agreement. The Parties further understand and agree that each of the terms of this Agreement are contractual and not a mere recital.

23. Each Party shall bear its own expenses and attorney's fees in connection with this matter, except as otherwise set forth herein, except with respect to the specific amounts in paragraphs 12 and 13 of this Agreement.

24. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The signatures may be exchanged by facsimile and this Agreement shall be fully effective in such circumstance.

25. The terms and provisions of this Agreement shall be deemed to have been drafted and proposed jointly by all parties and shall be construed neutrally. No term or provision hereof shall be construed adversely to a party on the grounds that such party drafted or proposed the term or provision.

26. To the extent that any Party is assigning, transferring, conveying, or otherwise granting title to any rights or interests in connection with this Agreement (including but not limited to with respect to any Marks or Domain Names), such rights or interests shall be passed

without any warranties (including, but not limited to, without any warranties of title, defeasibility, noninfringement, or enforceability) (except as provided in paragraph 20 above).

27. The exclusive jurisdiction for any action arising out of or to enforce this Agreement, or arising from any matters which are the subject matter of this Agreement, shall be before the Judge presiding over this matter, or his successor, within the United States District Court for the District of Connecticut, and the Parties hereby agree and consent to such exclusive jurisdiction.

IN WITNESS WHEREOF, the Parties, expressly intending to be legally bound, hereby acknowledge that they have consulted with and have received the advice from their respective counsel with respect hereto, and having given full and careful consideration to all aspects hereof, have executed this Settlement Agreement and Release.

Incredibly Edible Delites, Inc.

By: _____

Name: _____

Title: _____

Date: _____


Incredible Franchise Corporation

By: _____

Name: _____

Title: _____

Date:_____

Edible Arrangements, LLC

By: _____

Name: _____

Title: _____

Date:_____

Edible Arrangements Franchise Group

By: _____

Name: _____

Title: _____

Date:_____

without any warranties (including, but not limited to, without any warranties of title, defeasibility, noninfringement, or enforceability) (except as provided in paragraph 20 above).

27. The exclusive jurisdiction for any action arising out of or to enforce this Agreement, or arising from any matters which are the subject matter of this Agreement, shall be before the Judge presiding over this matter, or his successor, within the United States District Court for the District of Connecticut, and the Parties hereby agree and consent to such exclusive jurisdiction.

IN WITNESS WHEREOF, the Parties, expressly intending to be legally bound, hereby acknowledge that they have consulted with and have received the advice from their respective counsel with respect hereto, and having given full and careful consideration to all aspects hereof, have executed this Settlement Agreement and Release.

Incredibly Edible Delites, Inc.

By: *Susan Ellman, Pres.*
Name: Susan Ellman Pres
Title: President
Date: 12/2/05


Incredible Franchise Corporation

By: *Ellen Davis, Pres.* 12/2/05
Name: Ellen Davis, Pres 12/2/05
Title: President

13

Date:_____


Edible Arrangements, LLC

By: _____

Name: __TARIQ FARID__

Title: __President__

Date: __12-2-05__


Edible Arrangements Franchise Group

By: _____

Name: _____

Title: __President__

Date: __12-2-05__

14



EXHIBIT A

*Incredibly Edible Delites, Inc.*
*Edible Floral Creations*

EXHIBIT B





Exhibit C